Anthony Cordell WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 140–85.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 17, 1986.

Buddy Stevens, Angleton, for appellant.

John B. Holmes, Jr., Dist. Atty., and William J. Delmore, III and Carol Cameron, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

The trial court found appellant guilty of unlawfully carrying a handgun and assessed 90 days in the county jail, probated, and a fine of $350.00. The First Court of Appeals (Houston) affirmed in an unpublished opinion, holding that the trial court did not err in denying appellant's motion to suppress. *Williams v. State*, No. 01–84–0239–CR, delivered December 20, 1984. We granted appellant's petition for discretionary review to examine this holding.

The evidence at the hearing on the motion to suppress showed that Houston Police Officer Gildehaus was on patrol at about 3:30 p.m. on October 19th, 1983. Officer Gildehaus testified that he was driving west in the 2400 block of Anita, between Live Oak and Dowling. Gildehaus stated that Anita is a two-way street, running east and west. The officer observed appellant's pickup truck "parked on the wrong side of the street." The truck was parked on the south side of Anita, with its left (driver's side) wheels next to the curb. The truck was facing west, and Gildehaus was approaching the truck from behind. Gildehaus observed appellant sitting in the driver's seat of the truck. The driver's door was open. Gildehaus further testified as follows:

"And there was another male by the door, which the truck was opened. And I seen the other guy look like he handed [appellant] something. And when I seen him hand him something, I pulled up, got out of my vehicle, and walked towards the truck. And the guy that I thought he handed him something walked away from the truck and sat down. And the other guy had gotten out of the truck and was standing by the truck and the door was still opened. I looked inside

the truck, and I seen a brown paper bag."

Under cross-examination and upon further questioning by the court, Gildehaus stated that he did not actually see the other person hand appellant anything, that he did not see their hands at all, that he was uncertain whether the other person, or appellant, did the passing, or whether "they were passing something back and forth". When asked "Did you actually see the hands or see the shoulder movement", Gildehaus responded, "Just the shoulder from the hand glide." Gildehaus conceded that he could not tell whether the two men were handing something to each other or shaking hands.

Gildehaus testified that the man standing by the truck "had been brought to my attention by an informant of mine." Gildehaus testified that "From the information they told me they had stated he was selling nickel bags of marijuana in that area." Gildehaus stated that within the two years he had been patrolling the area, he had participated in 10 or 15 arrests for narcotics, mainly marihuana, offenses at the corner of Anita and Dowling streets. Gildehaus testified that he had had occasion to observe narcotics transactions twenty-five to thirty times. Gildehaus stated that on the instant occasion, he "thought there was a narcotics deal going down."

Gildehaus stopped his patrol car behind the truck, got out, and walked toward the two men to investigate. Gildehaus testified further as follows:

"And when I—the guy standing outside of the vehicle, he at first observed me when he seen me, he walked away from the pickup truck and the other guy looked like he made some kind of downward movement in the pickup truck."

By the time Officer Gildehaus reached the driver's door of the truck, the "other guy" had moved off and was sitting on some steps nearby. Appellant was out of the truck, standing by the open door. Gildehaus noticed a brown paper bag on the floorboard on the driver's side. Gildehaus pulled the open sack toward him and looked inside it. He then reached into the sack and moved a shirt that was lying on another sack. At that point Gildehaus saw a gunbarrel protruding from the second, "inner" sack. Gildehaus testified as follows:

"Q. Once you saw that, what did you do next?

"A. At the time I arrested the defendant, first I asked him if this was his truck and he said, yes, it was."

" . . .

"Q. What did you do? You placed the defendant under arrest?

"A. Yes, ma'am."

The record reflects that Gildehaus later "put the defendant into jail."

Gildehaus testified that the sack was within appellant's reach as he stood outside the truck. When asked why he "went into that truck," Gildehaus replied, "Two reasons. Narcotics and for my safety." Gildehaus was not asked and did not state why he arrested appellant.

Gildehaus seized two handguns from the sack. These were admitted into evidence over appellant's objection that the arrest was unlawful under the Fourth Amendment and Article I, Section 9 of the Texas Constitution, and that the handguns were the fruit of the unlawful arrest.

The State argues that Gildehaus had reasonable suspicion under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) to make an investigative stop of appellant. In addition, the State argues, Gildehaus was justified under *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) in making a protective search for weapons in the passenger compartment of the truck.

We need not decide these issues. We find merit in the State's alternative argument that the search of the sack was a search incident to a lawful custodial arrest.

Article 6701d, V.A.C.S., provides, in pertinent part:

"Sec. 96. (a) Except as otherwise provided in this section, every vehicle stopped or parked upon a two-way roadway shall be so stopped or parked with the right-hand wheels parallel to and

within eighteen (18) inches of the right-hand curb or edge of the roadway."

Violation of Art. 6701d, Sec. 96(a) is punishable as a misdemeanor. Art. 6701d, Sec. 143, supra.

Art. 6701d, Sec. 153 authorizes any peace officer to arrest without warrant any person found committing a violation of any provision of Article 6701d, supra.

Officer Gildehaus thus had probable cause to arrest appellant. That Gildehaus was investigating what he took to be a narcotics transaction is of no moment in this case. In *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) the Court wrote:

"We have since held that the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. [citation omitted.] The Courts of Appeals which have considered the matter have likewise generally followed these principles, first examining the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved."

See also 1 LaFave, Search and Seizure, Sec. 1.2(g) (Supp.1986) (arguing that the language quoted above from *Scott* "is precisely what the rule ought to be and that certain other developments in Fourth Amendment doctrine are necessary to ensure that the *Scott* rule persists in such unqualified form.")

Moreover, the fact that the search incident to the arrest preceded the formal custodial arrest by a few moments is of no consequence under *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) ("Once [Rawlings] admitted ownership of the sizable quantity of drugs found in [the] purse, the police clearly had probable cause to place [him] under arrest. Where the formal arrest followed quickly on the heels of the challenged search of [Rawlings'] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.")

Accordingly, Officer Gildehaus's search of the sack was justified as a search incident to arrest under both *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).[1]

There was no error in denying appellant's motion to suppress. The judgment of the Court of Appeals is affirmed.

ONION, P.J., dissents.

CLINTON, Judge, dissenting.

Once again I must protest the majority's plucking an issue at random from the case before us rather than addressing the issue on which we granted review. The majority spends three pages setting out the facts relevant to appellant's ground for review, then abruptly concludes, "We need not decide these issues." Maj. op. at p. 100. If we need not decide these issues, we should not have granted review. We certainly did not grant *appellant*'s petition for discretionary review in order to review "the State's alternative argument," as the majority decides in retrospect.

## I.

The State did not advance this "alternative argument" in the trial court. In the

---

1. The instant case must be distinguished from *Linnett v. State*, 647 S.W.2d 672 (Tex.Cr.App. 1983), *Christian v. State*, 592 S.W.2d 625 (Tex. Cr.App.1980) *cert. denied*, 446 U.S. 984, 100 S.Ct. 2966, 64 L.Ed.2d 841 (1980), and *Thomas v. State*, 572 S.W.2d 507 (Tex.Cr.App.1976). At the time of the search in those cases, the officer had detained the defendant only to issue him a written notice to appear in court for a traffic offense (the statutory alternative to a custodial arrest; see Art. 6701d, Sec. 148(a)). This Court held that the arrest in each case was not custodial, and therefore could not support a search incident to arrest under *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Here the record fails to reflect that Officer Gildehaus had detained appellant for the purpose of issuing him a traffic ticket. Instead, the record reflects, in rapid succession, the emergence of probable cause to arrest, a search of the passenger compartment, and a formal custodial arrest.

hearing on the motion to suppress, Houston Police Officer Gildehaus testified in passing that appellant's truck was parked on the wrong side of the street. That was not, however, what called his attention to appellant. Gildehaus testified that the man he saw talking to appellant had been described to him as a drug dealer, and the officer knew by personal experience that drug deals were frequent in the neighborhood. He had himself made ten or 15 arrests for such transactions in the two years he had been patrolling there. When asked why he parked and approached appellant Gildehaus testified:

"A Purpose, I went over there to see if—there seemed to me to be a narcotics deal going down. That's the reason I went over there.

Q You went over to check on a narcotics deal?

A That's correct."

The officer did not even hint at an intention to issue a ticket, let alone make a custodial arrest, for a *parking violation.* The State's argument to the trial court was that Gildehaus had articulable reasons for investigating a narcotics offense. "Officer Gildehaus clearly had the probable cause to investigate ... He was lawfully there investigating what he believed to be a narcotics transaction." This was the basis for the trial court's ruling that the pistols found in the search of appellant's truck were admissible in evidence.

The court of appeals' opinion does not even mention the fact that appellant was illegally parked. That court addressed only appellant's claim that the trial court erred in refusing to suppress the evidence because the officer lacked probable cause to arrest for a narcotics offense and therefore had no legal justification for searching the truck. The court of appeals pointed out the information available to the officer, such as that he was patrolling a "known narcotics area" and that a reliable informant had told him that the man he saw talking to appellant had been selling marihuana in that area. The court concluded that, "Based on the totality of the circumstances, we are of the opinion that the arresting officer had sufficient articulable facts to justify a temporary detention for the purpose of futher investigation. We hold that the arresting officer had sufficient probable cause to make the arrest and search of the appellant." Maj. opinion at p. 100.

In his petition to this Court appellant sought review of that holding. He argued that the "suspicious activities" observed by Officer Gildehaus were "as consistent with innocent activity as with criminal activity. Therefore, a detention based on those events is unlawful and the search is unreasonable."

This was the basis for our grant of review. The function of this Court on discretionary review is to "review decisions of the court of appeals." Art. 44.45(b), V.A.C. C.P. "Ordinarily this Court refuses review of grounds not raised or entertained in the court of appeals." *Garrett v. State,* n. 2, (Tex.Cr.App. No. 642–83, delivered June 11, 1986). Instead the majority in the instant case has devised its own ground for review, on an issue not decided by the court of appeals and therefore not before us. *Hernandez v. State,* 726 S.W.2d 53, (Tex.Cr.App. delivered this day) (concurring opinion).[1]

There is no reason for such relentless dodging of the issue we *do* have before us. The court of appeals' decision presents a straightforward issue for our own review, and the parties have argued that issue in

---

1. The Supreme Court of the United States was faced with a similar situation in *Jones v. United States,* 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958), in which federal agents had searched a residence and seized "nontaxpaid liquor." For the first time before the Supreme Court the government sought to justify this action as a search incident to the arrest of the defendant. The Court dismissed this argument, noting that "we do not consider this issue fairly presented by this case, for the record fails to support the theory now advanced by the Government. The testimony of the federal officers makes clear beyond dispute that their purpose in entering was to search for distilling equipment, and not to arrest petitioner." 357 U.S. at 500, 78 S.Ct. at 1257–58. Gildehaus's testimony in the instant case makes equally clear that his purpose was to search for drugs, not to arrest appellant for a parking violation.

their briefs and oral arguments in this Court. Appellant in his petition for discretionary review naturally addressed the opinion of the court of appeals, arguing that it was incorrect and why. He has had no opportunity to argue against the proposition the majority raises. If this Court decided the court of appeals was in error in its disposition of the case, we should remand to that court for consideration of the State's "alternative argument." *McCambridge v. State,* 712 S.W.2d 499 (Tex.Cr. App.1986). Instead the majority entirely ignores the opinion of the court of appeals as well as the arguments advanced attacking and defending that opinion. I dissent to this betrayal of our statutorily mandated function to *review* decisions according to reasons given by courts of appeals for making them.

## II.

The rationale the majority does use to affirm the judgment of the court of appeals is wrong. The majority concludes that because the officer *could* have made a custodial arrest he *could* have made a search of appellant's truck pursuant to that arrest, and that because this mythical justification exists we need pay no attention to what the officer actually was doing when he approached the truck. *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), relied on by the majority, does not support this proposition. In *Scott* federal law enforcement agents had placed a wiretap on the defendant's phone line pursuant to court order. However, the agents violated a federal statute by failing to try to minimize the number of phone calls they recorded. One agent testified they made no attempt to do so. The defendant argued that this bad faith on the part of the officers should be reason for suppressing the incriminating calls that had been recorded. Justice Rehnquist, writing for the Court, held that the officers would not have been able to minimize the number of calls recorded even if they had attempted to do so, and therefore the evidence should not be suppressed just be-

cause of the bad "state of mind" with which the officers acted. He cited for this proposition *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). (This is the "[citation omitted]" referred to in the majority's excerpt from *Scott.* The majority also omits part of the text, and no wonder.) In *Robinson* an officer saw a motorist he had previously stopped for driving without a license. Suspecting him of another offense, the officer stopped the motorist, who was again driving without a license, and arrested him for that offense. He then searched incident to the arrest and found heroin. The Supreme Court held that this search was justified even if the officer had arrested Robinson for driving without a license with the ulterior motive of searching him for drugs. "It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a *lawful custodial arrest* a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." 414 U.S. at 235,[2] 94 S.Ct. at 477.

In the instant case there *was* no "lawful custodial arrest" to justify the search of appellant's truck. There was no arrest at all, nor any attempt to make such an arrest. The officer approached the truck with the intent of searching for drugs, and that is what he proceeded to do.

The majority's attempt at n. 1 to distinguish this case from, *inter alia, Linnett v. State,* 647 S.W.2d 672 (Tex.Cr.App.1983), is unavailing. In that case a Houston police officer had stopped the defendant in order to issue him a ticket for an expired license plate. When the defendant's nervousness aroused the officer's suspicion he looked into the car, saw a canvas bag, opened the bag, and found a film canister containing hydromorphone. This Court unanimously held that this evidence should have been suppressed. The search was not a search incident to arrest because the defendant had not been arrested. The officer was detaining him only while writing a traffic ticket.

---

**2.** Emphasis is mine throughout this opinion.

The majority attempts to distinguish *Linnett* from the instant case by saying, apparently, that in *Linnett* the officer testified specifically that he had stopped the defendant only in order to issue him a traffic ticket, while in the instant case Officer Gildehaus did *not* testify that he stopped appellant *only* to give him a parking ticket. We are therefore to conclude that Gildehaus approached appellant in order to place him under custodial arrest for the parking violation and searched his truck incident to that arrest. This is untenable. Gildehaus was not approaching appellant *even* to write him a ticket, let alone make a full custodial arrest for a parking violation. He approached him to investigate what he suspected to be a narcotics offense. The majority would have us hold that unless an officer testified that he stopped a defendant *only* to issue a traffic or parking ticket, we must assume the officer's plan was to make a custodial arrest for the traffic or parking violation, even if the officer testified to the contrary.

There was no arrest for a traffic violation in this case. The search was therefore not made incident to such an arrest, and may not be justified on that basis. *Linnett*, supra; *Thomas v. State*, 572 S.W.2d 507 (Tex.Cr.App.1976); *Satterwhite v. State*, 726 S.W.2d 81 (Tex.Cr.App. No. 67,220, delivered this day) (Clinton, J., dissenting).

### III.

Even if we were presented with the issue decided by the majority, its analysis would be incomplete. It is true that Art. 6701d, Sec. 153, authorizes an officer to "arrest without warrant" anyone violating any provision of that Act, including the parking offense of Sec. 96. The majority interprets this to mean a full custodial arrest, such as would then justify a search of the arrestee's vehicle. But that proposition is far from obvious. Article I, § 9 of the Texas Constitution provides, "The people shall be secure in their persons, houses, papers and possessions, from all *unreasonable seizures or searches ...*" The Fourth Amendment to the U.S. Constitution provides a similar protection: "The right of

the people to be secure in their persons, houses, papers, and effects, against *unreasonable searches and seizures,* shall not be violated ..." Having decided that Gildehaus could have arrested appellant for the parking violation, the majority is then faced with the question whether to make a full custodial arrest, and a search incident to that arrest, would have been a reasonable action for the officer to take. The majority fails to address this issue.

Art. 6701d, supra,. provides an arresting officer with two choices. He may take a violator into custody, Sec. 147, or he may instead issue a notice to appear in court— that is, a traffic ticket. Sec. 148, supra. Because the officer is afforded such wide discretion, an appellate or reviewing court must decide whether the officer's action in a given instance was reasonable. To refuse such review is to leave citizens "subject to the discretion of the official in the field." *Camara v. Municipal Court*, 387 U.S. 523, 532, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930, 937 (1967). Therefore having decided that the officer could have made an arrest, the majority must then decide whether Gildehaus's hypothetical decision to place appellant under custodial arrest and search his vehicle pursuant to a *parking violation* would have constituted an "unreasonable search [ ] and seizure [ ]" in violation of our constitutional protections.

The answer is obvious. In *Robinson*, supra, the arresting officer testified that it was not unusual for him to make custodial arrests for the offense for which he had arrested the defendant—driving without a license. In *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the companion case to *Robinson*, the defendant was arrested for the same offense—driving without a license—and a search incident to that arrest produced marihuana. Again the arresting officer testified that it was not uncommon for him to arrest violators for this traffic offense, and the defendant conceded that the arrest had been a valid one. Had he not made that concession, a different case would have been presented. "It seems to me that a persuasive claim might have been made in this case that the

custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments. But no such claim has been made." 414 U.S. at 266–67, 94 S.Ct. at 492 (Stewart, J., concurring). Justice Powell expressed a similar concern at n. 2 of his concurring opinions in *Robinson* and *Gustafson*, 414 U.S. at 239, 94 S.Ct. at 478.

That question was not presented in *Robinson* and *Gustafson*, but it has been injected into the instant case by the majority's justification for the search of appellant's truck. If it is arguably unreasonable for an officer to make a custodial arrest for the "minor traffic offense" in those cases, how much more unreasonable would it be for an officer to make a custodial arrest for the offense of *parking on the wrong side of the street*? The arresting officers in *Robinson* and *Gustafson* at least testified that it was not uncommon for them to arrest for such offenses. I venture to say the State in this case would have been hard pressed to produce credible testimony that any officer in the history of this State had ever made a full custodial arrest of anyone strictly for a parking violation. If Officer Gildehaus had made such an arrest of appellant, his action would have been perfectly arbitrary and therefore "unreasonable." "[G]iven the pervasiveness of such minor offenses and the ease with which law enforcement agents may uncover them in the conduct of virtually everyone, ... there exists 'a power that places the liberty of every man in the hands of every petty officer,' precisely the kind of arbitrary authority which gave rise to the Fourth Amendment." 1 LaFave, Search and Seizure, Sec. 1.2(g) (Supp.1986) (quoting from the papers of John Adams).

I cannot believe that the majority truly is prepared to have this Court hold that any citizen of this State may be arrested for any petty parking violation and then subjected to a search of his person and vehicle, entirely at the discretion of the officer in the field. That is, however, precisely what the majority would hold.

I must dissent to another crippling blow to constitutional protections underlying liberty interests held so dear by citizens in a free society.

MILLER, J., joins this opinion.

TEAGUE, Judge, dissenting.

Orwell and the assertive and aggressive majority of the Supreme Court of the United States, are you listening?

Today, an assertive and aggressive majority of this Court, by using the provisions of a parking statute, Art. 6701d, Section 96(a), V.A.C.S., which requires that all motor vehicles stopped or parked upon a two-way roadway shall be so stopped or parked with the right-hand wheels parallel to and within eighteen (18) inches of the right-hand curb or edge of the roadway, is able to hold that the warrantless arrest of the appellant was based upon probable cause, thus causing the incidental search of his motor vehicle to be lawful. Henceforth, "any citizen [of this State] may be arrested for any petty *parking* violation and then [be] subjected to a [full scale and complete] search of his person and vehicle, entirely at the discretion of the officer in the field [for committing that violation]." (My emphasis.) (Clinton, J., dissenting opinion that was filed in this cause.)

Even though perhaps, but only perhaps, the present aggressive and assertive majority of the Supreme Court, in its quest to cause the Fourth Amendment to somehow vanish from the Bill of Rights to the Federal Constitution, would *not* hold that an unlawfully parked, but lawfully occupied by its driver, motor vehicle would give a police officer probable cause to order the driver to remove himself from the vehicle and to make a warrantless arrest, and then, pursuant to the arrest, the lawful right to conduct a full scale and complete warrantless search of the driver and the motor vehicle, cf. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), nevertheless, I would hold that for this type violation of the law, a petty parking traffic violation, as this Court is permitted to do, see Harrington, "The Texas Bill of Rights and Civil Liberties," 17 *Texas Tech. Law Review (No. 5, 1986),* that under the Texas Constitution a warrantless arrest

and warrantless search based upon a petty, minor traffic violation, here, violation of a parking statute, is against the public policy of this State, and is unjustified, unwarranted, and impermissible if the defendant signs the promise to appear as provided in Section 148 of Art. 6701d, V.A.C.S. My view comports with what the *Uniform Vehicle Code and Model Traffic Ordinance* § 16–201–206 (rev.1971) (Supp.1972), recommends; what the *American Law Institute* has recommended, see *ALI Model Code of Pre-Arraignment Procedure* § 3.02(4) (Tent.Draft No. 2, 1969); and what the *A.B.A. Standards Relating to Pretrial Release* § 2.1 (Tent.Draft March 1968) has recommended. Also see *State v. Hehman*, 90 Wash.2d 45, 578 P.2d 527 (Wash.Sup.Ct.1978).

Neither my staff's manual research nor my own independent manual research, nor even our access to the more technologically enlightened ways of doing research, has revealed a single case where any court in this nation, State or Federal, even the Supreme Court of the United States, has ever held, as this Court does today, that a police officer can make a custodial arrest of an individual who does nothing more than violate a parking statute or ordinance, and then, pursuant to the arrest, conduct a full scale and complete search of both the driver and vehicle. This lack of authority is understandable, given the fact that most rational appellate court judges divide traffic violations into two groups: "First there is the group of violations, of which *double parking* is an example, where a notice of violation is issued and the driver is permitted to go on his way. The presumption is that drivers who *double park* or have *a defective taillight* are not necessarily a hazard on the road or to the community and are not necessarily considered dangerous criminals. This is considered to be a 'routine traffic stop' ... The second group of violations includes such offenses as driving without a license [, driving while license is suspended,] or driving while intoxicated. These offenses are usually considered moving violations. In these instances the violator may not be permitted to drive away and may therefore be subject to custody arrest

..." Farrington, "Police May Conduct Full Search Incident to Custody Arrest for Traffic Violation," Vol. 1, No. 3, January, 1974, *Search and Seizure Law Report.*

In this instance, the facts are obviously clear that the appellant's transgression fell within the first category.

Given what the majority opinion states in *Vicknair v. State*, —— S.W.2d —— (Tex.Cr. App., No. 036–84, delivered this date), that failure to have all of the items on a motor vehicle that is subject to being inspected in good working order, or which items require any kind of adjustment, will give rise to probable cause to arrest and search a motorist and his motor vehicle, this opinion, that holds that a violation of a parking statute will give rise to probable cause to arrest and search a motorist and his motor vehicle, is really not all that shocking. Thus, at first blush, in light of *Vicknair*, supra, the majority opinion appears unremarkable.

What is so striking and remarkable about the majority opinion, however, is its studied air of unreality and its total and complete lack of sensitivity of, if not total outright ignorance of, the provisions of the Texas Constitution and the statutes of this State that govern warrantless searches and seizures. Today's majority opinion is thus actually troubling less for the law it creates than for the constitutional and statutory law of this State that it ignores or refuses to accept.

Harrington, see supra, has expressed the belief that "[T]he last page [on the law of warrantless searches and seizures] remains to be written [by the Court of Criminal Appeals]." Given what an aggressive and assertive majority of this Court has now laid down to be the law regarding warrantless arrests, searches, and seizures of drivers and their automobiles, at least for the present and near future, I am not so sure Harrington is correct.

However, this is not to state that there will not in the future be any dissenting opinions by me in this area of the law, because I honestly believe that such dissenting opinions as this one, and the one

that Judge Clinton has written in this cause, will at least let those out there in the hinterlands who still believe in the respective Bills of Rights, as well as the statutory laws of this State, know that the flames of liberty and freedom have not yet been totally extinguished by all members of the Court of Criminal Appeals. Some of us do care!!!

Therefore, at this time, I will do no more than echo Judge Clinton's fulminating, but thought provoking, concluding comment that he makes in the dissenting opinion that he files in this cause: "I must dissent to another crippling blow to constitutional protections underlying liberty interests held so dear by citizens in a free society." I close by saying that hopefully in the not too far distant future a majority of this Court will regain its Texas constitutional and statutory sanity when it comes to applying the law applicable to warrantless arrests, searches and seizures of motorists and their motor vehicles, and will rule accordingly, rather than doing police officers' work as it does in this cause.