COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NO.
02-05-210-CR

 

 

HECTOR CASTRO                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM
THE 90TH DISTRICT COURT OF YOUNG COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellant Hector Castro
appeals his conviction for the offense of manufacture of methamphetamine in an
amount of 4 grams or more, but less than 200 grams.  After the trial court denied his motion to
suppress the methamphetamine that was found in a bag in the front seat of a car
in which Appellant was a backseat passenger, Appellant entered an open plea of
guilty, and the trial court assessed punishment at sixty years= confinement and a $1,000 fine, and gave him permission to appeal the
ruling on the motion to suppress.[1]  In his sole issue on appeal, Appellant
challenges the denial of his motion to suppress.  We reverse and remand. 

                                          BACKGROUND








Appellant filed a motion to
suppress all illegally seized evidence, including items taken by police from a
motor vehicle in which he was a passenger in Olney, Texas on July 19, 2004,
after which he was arrested for the instant offense.[2]  On May 18, 2005, the trial court held a
hearing on Appellant=s
motion.  The State=s contention at the hearing was that Appellant did not have standing
to challenge the legality of the stop of the vehicle because Appellant was not
the owner of the vehicle, it was not loaned to him, and he was not in control
of the vehicle but was merely a passenger. 
Appellant=s counsel
agreed that Appellant was not the owner or in control of the vehicle, but
informed the court that counsel believed that the arresting officer would
testify that Appellant had in fact claimed an ownership interest in the black
bag found in the vehicle.  Therefore,
Appellant=s counsel
argued that Appellant had standing to challenge the legality of the stop of the
vehicle.

Officer Frankie Bailey was
the sole witness to testify at the suppression hearing.  He stated that on July 19, 2004, he worked
for the Young County Sheriff=s Department and was assigned to the Cross Timbers Narcotics Task Force.  On that day, he was contacted by the Olney
Police Department for assistance with a possible drug investigation.  He was told that a homeowner had called the
Olney Police Department because, as he was in the process of evicting Appellant
from a residence, the homeowner found a black bag inside the house.  The homeowner went to the police department
to get help; the police called Officer Bailey, who subsequently arrived at the
house.[3]  The officer answered affirmatively when asked
whether the Olney Police Department informed him of Athese course of events.@  When asked Awho might be connected with that lab or those items found in that
residence@ and who he
suspected, he answered Appellant.[4]









Officer Bailey then advised
the Olney Police Department Aof the information [he] had with [Appellant]@ and requested they be on the lookout for him.  The officer was later notified by the Olney
Police Department that Appellant had been located.  When Officer Bailey got to Appellant=s location, he was advised by Sergeant Loeffert that at the time of
the stop of the vehicle in which Appellant was riding, the black bag was
located on the front floorboard of the vehicle, and Appellant was a passenger
in the back seat, crouched down with a jacket over his head.  Officer Bailey acknowledged that he was not
present when the vehicle was stopped, but he Awas told the reason for the traffic stop was failure to signal a lane
change.@  When asked upon
cross-examination whether any failure to signal a lane change is a violation of
the law, he responded A[w]ithin a
hundred feet before turning,@ but admitted he was not present to see the driver=s signaling or what the driver was doing. 

At the conclusion of the
brief hearing, the trial court requested the parties each submit a brief on the
issue of Appellant=s standing
to complain of the search of the vehicle. 
Both sides filed trial briefs, but the record does not contain any
subsequent ruling on the motion by the court, nor were any findings of fact or
conclusions of law filed by the court. 
Nonetheless, both parties agree on appeal that the trial court at least
implicitly overruled the motion.








The appellate record must
show that the trial court ruled on the motion either expressly or
implicitly.  See Tex. R. App. P. 33.1(a)(2)(A); Gutierrez
v. State, 36 S.W.3d 509, 511 (Tex. Crim. App. 2001).  As noted by the State, a trial court's ruling
on a matter need not be expressly stated if its actions or other statements
otherwise unquestionably indicate a ruling. 
Rey v. State, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995).

Five days after the hearing
on the motion to suppress, Appellant entered his guilty plea, and the court
found him guilty.  The court then stated
that it would proceed to punishment, but before the punishment hearing the
court stated, AAnd, Mr.
Smith [Appellant=s trial
attorney], I=m relatively
sure that you=re going to
appeal the Court=s ruling on
the Motion to Suppress, so for purposes of the record, you do have the Court=s consent to appeal that decision.@  Accordingly, we agree with the
parties that a reading of the record reflects that the trial court implicitly
denied Appellant=s motion to
suppress.








We disagree with the State=s contention on
appeal that any alleged error regarding the denial of Appellant=s motion to
suppress has not been preserved for appellate review.  Appellant filed a motion to suppress any and
all evidence acquired as a result of the stop and search of the car in which he
was a passenger; at the hearing, the trial court heard argument and evidence;
and the court subsequently implicitly denied the motion and permitted Appellant
to appeal the court=s ruling. 
There is no indication that the trial court was not sufficiently aware
of the grounds upon which Appellant sought to suppress the evidence made the
basis of the charges against him.  See
Tex. R. App. P. 33.1(a)(1).

                                    MOTION TO SUPPRESS

Standard Of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex.
Crim. App. 1999).  Therefore, we give
almost total deference to the trial court=s rulings on (1) questions of historical fact and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d).  But when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Estrada v. State, 154 S.W.3d 604, 607
(Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

When reviewing a trial court=s ruling on a mixed question of law and fact, the court of appeals may
review de novo the trial court=s application of the law of search and seizure to the facts of the
case.  Estrada, 154 S.W.3d at
607.  When there are no explicit findings
of historical fact, the evidence must be viewed in the light most favorable to
the trial court=s ruling, id.,
and we assume that the trial court made implicit findings of fact supported by
the record.  Ford v. State, 158
S.W.3d 488, 493 (Tex. Crim. App. 2005); Carmouche, 10 S.W.3d at
327-28.  However, we review de novo the
determination of whether a specific search or seizure was
"reasonable" as an ultimate question of Fourth Amendment law.  Kothe v. State, 152 S.W.3d 54, 62
(Tex. Crim. App. 2004);  Carmouche,
10 S.W.3d at 327‑28.

Does Appellant Have Standing
To Challenge The Stop Of The Vehicle?








Appellant contends that the
trial court abused its discretion in holding that Appellant lacked standing to
assert a violation of his right to be free from an unreasonable search and
seizure.  The State responds that no such
ruling was made by the trial court, which, as mentioned above, only implicitly
denied Appellant=s motion to
suppress without stating any reasons or filing any findings or
conclusions.  The State argues
alternatively that Appellant lacked standing to challenge the search of the
vehicle, but that even if Appellant had standing the trial court=s ruling was correct because the State proved that the officer who
stopped the vehicle had probable cause to do so.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case. 
Armendariz v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert.
denied, 541 U.S. 974 (2004); Ross, 32 S.W.3d at 856; Romero,
800 S.W.2d at 543.[5]


Generally, the right to challenge the lawfulness of a
search is limited to persons with Astanding,@ that is, to those
who have been aggrieved by a search

and
seizure.  Goehring v. State, 627
S.W.2d 159, 164 (Tex. Crim. App. [Panel Op.] 1982).  When a search is contested, the accused
establishes standing, or his right to complain of the search, by showing that
he had a reasonable expectation of privacy in the area searched.  Chapa v. State, 729 S.W.2d 723, 725
n.1 (Tex. Crim. App. 1987).  The court of criminal appeals recently
explained these guidelines in Kothe,[6] 








Proof
of "a reasonable expectation of privacy" is at the forefront of all
Fourth Amendment claims.  Any defendant
seeking to suppress evidence obtained in violation of the Fourth Amendment must
first show that he personally had a reasonable expectation of privacy that the
government invaded.  FN1 He must
prove that he was a "victim" of the unlawful search or seizure.  FN2 He has no standing to complain
about the invasion of someone else's personal rights.  FN3 Only after a defendant has
established his standing to complain may a court consider whether he has
suffered a substantive Fourth Amendment violation.  FN4 Although we defer to the trial
court's factual findings and view them in the light most favorable to the
prevailing party, we review the legal issue of standing de novo.  FN5.

 

FN1 See Rakas v. Illinois, 439
U.S. 128, 139, 99 S. Ct. 421, 58 L.Ed.2d 387 (1978) (noting that issue of
standing involves two inquiries: first, whether defendant has alleged an Ainjury in fact@; and second, Awhether the proponent is asserting
his own legal rights and interests rather than basing his claim for relief upon
the rights of third parties@).  AFourth Amendment rights are
personal rights which, like some other constitutional rights, may not be
vicariously asserted.@ 
Alderman v. United States, 394 U.S. 165, 174, 89 S. Ct. 961, 22
L.Ed.2d 176 (1969).

 

FN2
See generally 5 Wayne R. Lafave, Search and Seizure ' 11.3, at 118 (3d ed. 1996).

 

FN3
United States v. Salvucci, 448 U.S. 83, 84‑85, 100 S. Ct. 2547, 65 L.Ed.2d 619 (1980);
Villarreal v. State, 708 S.W.2d 845, 849‑50 (Tex. Crim. App. 1986).

 








FN4 See Villarreal v. State, 935
S.W.2d 134,138 (Tex. Crim. App. 1996); United States v. Pierce, 959 F.2d
1297, 1303 (5th Cir. 1992); United States v. Brazel, 102 F.3d 1120, 1147
(11th Cir. 1997).  Because warrantless searches
and seizures are presumed to be unreasonable, the prosecution must establish
that any search or seizure was justified under an exception to the warrant
requirement.  Coolidge v. New
Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971).

 

FN5
State v. Johnson,
896 S.W.2d 277, 285 (Tex. App.CHouston [1st Dist.] 1995), aff'd, 939 S.W.2d 586
(Tex. Crim. App. 1996); see United States v. Phillips, --- F.3d ----,
----,2004 U.S. App. LEXIS 17274 *9 (5th Cir. 2004) (noting that A[w]hether a defendant has standing
to contest an allegedly illegal search is a question of law@ and is reviewed de novo); United
States v. DeLuca, 269 F.3d 1128, 1131 (10th Cir. 2001) (stating that courts
review de novo the issue of whether a defendant has standing to
challenge a search).

 

152
S.W.3d at 59.  

The court of criminal appeals in Kothe cited with
approval the following statement from a well-known legal treatise: 

If either the stopping of the car
or the passenger's removal from it are unreasonable in a Fourth Amendment
sense, then surely the passenger has standing to object to those constitutional
violations and to have suppressed any evidence found in the car which is their
fruit. 

 

Id. at 61, citing 5 Lafave, ' 11.3(e), at 173‑74.

 

The court of criminal appeals held that the testimony in Kothe
established that both the driver and passenger of the vehicle had a reasonable
expectation of privacy in the right to be free from an illegal detention,
reasoning that "[t]he intrusion a vehicle stop causes is personal to those
in the car when it occurs."  Id.  In support of its statement, the court cited
numerous authorities involving a passenger=s standing to
contest the stop of a vehicle:








United
States v. Powell,
929 F.2d 1190, 1195 (7th Cir.1991) (collecting cases and concluding that
passengers, as well as drivers, have standing to challenge a vehicle stop or
prolonged detention); see also United States v. Woodrum, 202 F.3d 1, 6
(1st Cir. 2000) (citing Rakas and holding that "each occupant of a
car has a right to challenge the propriety of a traffic stop under the Fourth
Amendment"); United States v. Roberson, 6 F.3d 1088, 1091 & n.6
(5th Cir. 1993) ("[w]hereas the search of an automobile does not implicate
a passenger's fourth amendment rights, a stop results in the seizure of the
passenger and driver alike.  Thus, a
passenger of a stopped automobile does have standing to challenge the seizure
as unconstitutional"); United States v. Erwin, 875 F.2d 268, 269,
n.2 (10th Cir.1989) (citing Wong Sun and holding that "even if
defendant lacks standing to challenge the search of the car, if the initial
stop was illegal, the seized contraband is subject to exclusion under the
'fruit of the poisonous tree' doctrine"); State v. Harms, 233 Neb.
882, 884‑87, 449 N.W.2d 1, 4 (1989) (collecting cases and concluding that
an occupant of a vehicle will ordinarily have a legitimate expectation to be
free of unreasonable governmental intrusion which gives the occupant standing
to challenge the stop as violative of his Fourth Amendment rights); State v.
DeMasi, 419 A.2d 285 (R.I. 1980), vacated on other grounds, 452 U.S.
934, 101 S. Ct. 3072, 69 L.Ed.2d 948 (1981) (holding that all occupants of the
vehicle had standing to challenge the constitutionality of the stop because
"all three shared a legitimate expectation that they would be free from
unreasonable governmental intrusion occasioned by the stop, the request for
identification, and the warrant check. 
To hold otherwise here would be to draw artificial, formalistic
distinctions not grounded in logic").

 

Id. at 61 n.19.

 








Applying these principles, this court has recognized that
generally a stop of a vehicle results in a seizure of the passenger and driver
alike, and a person has standing to challenge the stop of a vehicle in which he
was a passenger.  Tucker v. State,
183 S.W.3d 501, 507 (Tex. App.CFort Worth 2005,
no pet.).  Similarly, we hold in the case
at bar that Appellant had standing to challenge the initial stop of the vehicle
in which he was a passenger.  See
Kothe, 152 S.W.3d at 61 & n.19; Tucker, 183 S.W.3d at 507.

Reasonable Suspicion To Stop
The Vehicle

The Fourth Amendment protects
against unreasonable searches and seizures. 
U.S. Const. amend.
IV.  To suppress evidence because of an
alleged Fourth Amendment violation, the defendant bears the initial burden of
producing evidence that rebuts the presumption of proper police conduct.  Ford, 158 S.W.3d at 492.  A defendant satisfies this burden by establishing
that a search or seizure occurred without a warrant.  Id. 
Once the defendant has made this showing, the burden of proof shifts to
the State, which is then required to establish that the search or seizure was
conducted pursuant to a warrant or was reasonable.  Id.








Whether a search is
reasonable is a question of law that we review de novo.  Kothe, 152 S.W.3d at 62.  Reasonableness is measured by examining the
totality of the circumstances.  Id.
at 63.  It requires a balancing of the
public interest and the individual=s right to be free from arbitrary detentions and intrusions.  Id. 
A search conducted without a warrant is per se unreasonable unless it
falls within one of the Aspecifically
defined and well established@ exceptions to the warrant requirement.  McGee v. State, 105 S.W.3d 609, 615
(Tex. Crim. App.), cert. denied, 540 U.S. 1004 (2003); see Best,
118 S.W.3d at 862.

A detention, as opposed to an
arrest, may be justified on less than probable cause if a person is reasonably
suspected of criminal activity based on specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 22, 88 S.
Ct. 1868, 1880 (1968); Carmouche, 10 S.W.3d at 328.  An officer conducts a lawful temporary
detention when he has reasonable suspicion to believe that an individual is
violating the law.  Ford, 158
S.W.3d at 492.  Reasonable suspicion
exists when, based on the totality of the circumstances, the officer has
specific, articulable facts that, when combined with rational inferences from
those facts, would lead him to reasonably conclude that a particular person is,
has been, or soon will be engaged in criminal activity.  Id. at 492-93.  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Id.  at 492.








It was undisputed at the
suppression hearing that this case involved a warrantless stop and arrest.  Accordingly, the burden of proof shifted to
the State and whether Appellant attempted to refute the existence of sufficient
suspicion is irrelevant to the reasonable‑suspicion analysis.  See Ford, 158 S.W.3d at 492.  Appellant was not charged with the
responsibility of challenging whether the police officers had specific facts
warranting the detention; the State bore the burden of establishing the
reasonableness of the warrantless detention. 
See id.  

When a traffic violation is committed
in an officer's presence, the officer has probable cause to lawfully stop and
arrest or detain the violator.  Tex. Code Crim. Proc. Ann. art.
14.01(b) (Vernon 2005); Tex. Transp.
Code Ann. '  543.001 (Vernon 1999); Tyler v. State,
161 S.W.3d 745, 748 (Tex. App.CFort Worth 2005, no pet.); see Williams v. State, 726 S.W.2d
99, 100-01 (Tex. Crim. App. 1986). 








As stated previously, only
one witness testified at the suppression hearing.  The officer who stopped the vehicle did not
testify, nor did anyone who observed the traffic stop.  The entire extent of the evidence regarding
the stop of the vehicle came from Officer Bailey, who was at the homeowner=s residence when he was notified by either Sergeant Loeffert or Athe chief@ that the
vehicle had been located; he arrived at the location where Appellant was being
held after the initial stop of the vehicle had already occurred.  Officer Bailey stated that to his knowledge,
there was not an outstanding arrest warrant for Appellant or for the driver of
the vehicle.  When asked what the reason
was for the stop of the vehicle, the officer responded, AI was told the reason for the traffic stop was failure to signal a
lane change.@  He was not asked and did not testify regarding
who told him the reason for the traffic stop of the vehicle or who in fact
actually stopped the vehicle.[7]  When asked whether any failure to signal a
lane change is a violation of the law, the officer responded, A[w]ithin a hundred feet before turning.@  He unequivocally acknowledged
that he was not present when the vehicle in question was stopped and was not
there to determine what the facts and circumstances were when the vehicle was
stopped or to see the driver=s signaling, or lack thereof. 
He conceded that it might be possible that not every failure to signal a
lane change would result in probable cause to arrest someone.  He did not indicate that he had been told any
of the details of the alleged traffic violation.








Although not mentioned during the suppression hearing or in
the parties= briefs on appeal, presumably the offense
that Officer Bailey was referring to is the requirement of section 545.104(a)
of the transportation code that provides, AAn operator shall
use the signal authorized by Section 545.106 to indicate an intention to turn,
change lanes, or start from a parked position.@  Tex.
Transp. Code Ann. ' 545.104(a) (Vernon 1999).  The statute further provides that A[a]n operator
intending to turn a vehicle right or left shall signal continuously for not
less than the last 100 feet of movement of the vehicle before the turn.@  Id. ' 545.104(b).  Officer Bailey=s equivocal
testimony quoted above must be construed as indicating that he was told that
the offense for which the vehicle was stopped was either a failure to signal
when changing lanes, or a failure to signal within one hundred feet of turning.

Section 545.106 provides two
methods by which an operator of a vehicle may comply with section 545.104:  A(1) using the hand and arm; or (2) lighting signal lamps approved by
the department.@  Id. ' 545.106(a) (Vernon 1999).[8]  This section further specifies that if the
vehicle meets certain dimensional specifications, the required signal must be
given by lighting the signal lamps.  Id.
' 545.106(b).  Section 545.107
states that Aan operator
who is permitted to give a hand and arm signal@ shall do so in the manner specified in that statute.  Id. ' 545.107 (describing the appropriate hand and arm signals). 








The suppression hearing in
the instant case did not include any discussion, argument, or testimony
regarding what type of Avehicle@ Appellant was a passenger in when stopped by the police.  The questions and responses from Officer
Bailey consistently use the term Avehicle@; without
more, there was no way for the trial court or this court to determine whether
the driver was permitted by sections 545.104, 545.106, and 545.107 to use hand
signals to indicate a change of lane or to indicate that the vehicle was
turning in one hundred feet.








Ford v. State provides guidance in our determination of whether the State met its
burden in the instant case of establishing that the officer who stopped the
vehicle had reasonable suspicion to believe that an individual was violating
the law.  158 S.W.3d 488.  In that case, the arresting officer, Peavy,
testified that he saw Ford following another car at a distance that Peavy
believed was insufficient and, thus, in violation of a Texas highway
statute.  Id. at 493.  Specifically, Peavy stated that Ford was Afollowing too close.@  Id.  The court of criminal appeals held that the
record revealed an absence of any facts allowing an appellate court to
determine the circumstances upon which Peavy could reasonably conclude that
Ford actually was, or had been, or soon would have been engaged in criminal
activity.  Id.  Instead, the trial court was presented
only with a conclusory statement that Ford was violating a traffic law.  Id. 
The court of criminal appeals held that without specific, articulable
facts, a court has no means of assessing whether the officer=s opinion was objectively reasonable, and mere opinions are
ineffective substitutes for specific, articulable facts in a
reasonable-suspicion analysis.  Id.  When a stop is not based on objective
criteria, Athe risk of
arbitrary and abusive police practices exceeds tolerable limits.@  Id.   

In reversing the trial court=s denial of Ford=s motion to
suppress, the court concluded, 

The evidence before the trial court indicated
only that in Peavy's judgment, Ford was following another car too closely in
violation of Transportation Code ' 545.062(a).  The State failed to elicit any testimony
pertinent to what facts would allow Peavy to objectively determine Ford was
violating a traffic law in support of his judgment.  Even viewing the evidence in the light most
favorable to the trial court's ruling, the record does not support a finding of
reasonable suspicion.  Because the record
fails to reveal any objective facts, we hold that the trial court erred in
denying Ford's motion to suppress.

 

Id. at
494. 

 








The dissent in the instant
case states that Ford is not applicable to the facts of Appellant=s case because Ford only requires the inclusion of specific and
articulable facts when the reason for the stop is based on the subjective
opinion of the officer.  Dissent at
3.  Ford is applicable precisely
because Officer Bailey=s testimony
did not present an objective description of the facts underlying the
reasonableness of the stop of the vehicle. 
The officer=s testimony
was purely subjective and the trial court could not determine based upon the
testimony which traffic offense, if any, the driver of the vehicle
committed.  Was it failure to signal a
lane change, or was it failure to indicate an intention to turn a vehicle one
hundred feet before the turn?  The
officer=s cursory testimony reflects that it could be either of these
offenses.  Did the driver of the vehicle
fail to signal a lane change or turn because the vehicle was required to be
equipped with signal lamps which the driver did not use?  Or, was the vehicle such that it was
permissible for the driver to signal by using hand signals, which may or may
not have been used? 













The dissent states
that where testimony is based on an objective observation of a police officer,
the risk of allowing a police officer=s individual
perception to justify a stop is not present. 
Dissent at 3.  However, the cases
cited in support of this statement do not discuss this specific proposition.[9]
              Having reviewed the evidence in the
instant case in the light most favorable to the trial court=s implied finding that the officer who initiated the traffic stop of
the vehicle had reasonable suspicion to stop the vehicle, we conclude that the
State did not meet its burden of establishing that the stop was reasonable.  Although an officer who subsequently arrived
on the scene testified that he had been told by an unnamed source that the
reason for the traffic stop was the driver=s failure to signal a lane change, or possibly failure to signal
within a hundred feet before turning, the record is void of any testimony
whatsoever adduced from anyone, with or without personal knowledge, of the
objective facts or details regarding the stop of the vehicle.[10]  Based upon the record before us, and
reviewing the totality of the circumstances, we are unable to conclude that an
unknown officer who initially stopped the vehicle had specific, articulable
facts that, when combined with rational inferences from those facts, would lead
him to reasonably conclude that the driver of the vehicle had been engaged in a
traffic violation.  See Ford, 158
S.W.3d at 493-95.[11]  Accordingly, we hold that the trial court
abused its discretion in denying Appellant=s motion to suppress the evidence found in the vehicle.

Harm Analysis








Having found error, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  Tex. R. App. P. 44.2. 
The harm analysis for the erroneous admission of evidence obtained in
violation of the Fourth Amendment is rule 44.2(a)=s constitutional standard.  Hernandez
v. State, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Accordingly, we must
reverse the trial court=s judgment
unless we determine beyond a reasonable doubt that the error did not contribute
to Appellant=s conviction
or punishment.  Tex. R. App. P. 44.2(a). 
The question is whether the trial court=s denial of Appellant=s motion to suppress and admitting the evidence was harmless beyond a
reasonable doubt.  See Williams v.
State, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).  In applying the Aharmless error@ test, we
ask whether there is a Areasonable possibility@ that the error might have contributed to the conviction.  Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999).

After carefully reviewing the
record and performing the required harm analysis under rule 44.2(a), we are
unable to determine beyond a reasonable doubt that the error did not contribute
to Appellant=s conviction
or punishment.  See Williams, 958
S.W.2d at 195.  The erroneous admission
of the contraband formed the basis for Appellant=s conviction; thus, Appellant was harmed by its admission.  Accordingly, we sustain Appellant=s sole issue.

 

 

 

 

 








                                           CONCLUSION

We reverse the judgment of
the trial court and remand the cause for further proceedings.

 

DIXON W. HOLMAN

JUSTICE

 

 

PANEL
F:  CAYCE, C.J.; HOLMAN and MCCOY, JJ.

 

MCCOY,
J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED:  August 10, 2006

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-210-CR

 

 

HECTOR CASTRO                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM
THE 90TH DISTRICT COURT OF YOUNG COUNTY

 

                                              ------------

 

                                   DISSENTING
OPINION

 

                                              ------------

I concur with the majority=s holding that
Appellant had standing to challenge the initial stop of the vehicle in which he
was a passenger.  I disagree, however,
with the holding that the State did not meet its burden of establishing that
the stop was reasonable. 








The majority relies on Ford v. State, 158 S.W.3d 488
(Tex. Crim. App. 2005), in concluding that the State did not meet its burden of
proving that the stop was reasonable.  In
Ford, the police officer testified that he stopped Ford because Ford was
Afollowing too
close@ to another
car.  Id. at 493.  The court found a complete absence of
objective factual support in the record. 
Id.  It determined that
without Aspecific,
articulable facts,@ the statement was merely the opinion of
the officer, and the court had no means of assessing whether the stop was
reasonable.  Id. at 493-94.

The purpose of providing Aspecific and
articulable@ facts is to create a standard that
disregards any subjective intent of the officer making the stop and looks
solely to whether an objective basis for the stop exists.  Id. at 492.  Therefore, if the stop was based on the
subjective judgment of the police officer, objective facts must be provided to
support the decision.  This standard
exists to prevent the risk of arbitrary or abusive police practices that could
result if a police officer=s subjective
opinion were allowed to suffice instead of specific facts.  Id.  








In Ford, the testimony that the cars were Afollowing too
close@ was subject to varying
interpretations depending on the person who observed the conduct.  One officer=s opinion of what
constitutes Afollowing too close@ could differ from
another=s.  Immediate questions arise from the
testimony:  How close were the cars?  What was the speed of the vehicle and other
traffic?  What were the road
conditions?  Without additional objective
facts to support this testimony, the stop is justified only by the officer=s individual
perception. It is apparent that additional facts were necessary in the Ford case
because the officer=s statement was in fact an opinion.

An examination of the Ford rule shows that Aspecific and
articulable facts@ are necessary to justify a stop only when
the stop would otherwise be  based only
on the subjective opinion of the officer. 
Ford is not applicable to this case because the stop was
based on the failure to signal a lane change, 
an offense that could be objectively determined.  Where testimony is based on an objective
observation, such as the running of a red light, the risk of allowing a police
officer=s individual
perception to justify a stop is not present. 
See McVickers v. State, 874 S.W.2d 662, 663-64 (Tex. Crim. App.
1993) (running a red light is a sufficient basis for stop); Tores v. State,
518 S.W.2d 378, 379  (Tex. Crim. App.
1975) (running a stop sign is a sufficient basis for stop); Walter v. State,
997 S.W.2d 853, 858 (Tex. App.CAustin 1999), rev=d on other
grounds, 28 S.W.3d 538 (Tex. Crim. App. 2000) (failing to signal before making
a turn is an objective basis for stop).








Here, the driver=s Afailure to signal
a lane change@ was, in and of itself, an objective
reason for the stop.  Such an offense was
not subject to various interpretations: either the driver used her signal to
change lanes or she did not.  Unlike Ford,
where additional facts were absolutely necessary to determine whether there was
an objective basis to stop the car, such facts were not necessary in this
case.  Furthermore, while objective
questions arose to challenge a subjective observation in the Ford
testimony, the only question that arose from the testimony in the case before
us was whether or not the offense occurred. 
Because the stop was based on the observation of an objective offense
rather than the officer=s subjective judgment that an offense may
have occurred, no additional facts must be provided to show that there was an
objective basis to stop the vehicle.          








Despite the fact that an officer may rely upon information
relayed to him by other officers, the majority focuses heavily on the fact that
the testifying officer was told the reason for the stop, rather than was
present when the stop was made.  See
State v. Jennings, 958 S.W.2d 930, 933 (Tex. App.CAmarillo 1997, no
pet.) (citing Fearance v. State, 771 S.W.2d 486, 509 (Tex. Crim. App.
1988), cert. denied, 492 U.S. 927 (1989)).  While Officer Bailey testified that he was not
present when the stop was made, he did testify that when he arrived at the
scene of the traffic violation he was Atold the reason
for the traffic stop was failure to signal a lane change.@[1]  It
is important to note that hearsay is admissible in a suppression hearing.  See Granados v. State, 85 S.W.3d 217,
227 (Tex. Crim. App. 2002), cert. denied, 538 U.S. 927 (2003).  An officer may rely upon information given to
him by other officers, such as the information told to  Officer Bailey concerning the reason for the
stop.  See Jennings, 958 S.W.2d at
933. 

Although the majority asserts that the officer=s testimony did
not provide an objective description of the facts to show the reasonableness of
the stop, case law supports the position that the stop was reasonable.  In Walter, the court held that
the state trooper=s statement that he observed the driver commit the traffic
offense of changing lanes without signaling was substantial evidence that he
had reasonable suspicion to stop the car. 
See Tex. Dep=t of Pub. Safety v. Walter, 979 S.W.2d 22, 29 (Tex. App.CHouston
[14th Dist.] 1998, no pet.).  In Shellberg, the
court held that the officer properly stopped the car for the failure to signal.
 Tex. Dep=t Of
Pub. Safety v. Shellberg, 2005
WL 1981488, at *2 (Tex. App.CCorpus Christi Aug. 18, 2005, no pet.) (mem. op.).  In Hargrove, a detective testified
that the officers made the traffic stop based on the driver=s
failure to signal a lane change.  The
court held that there was reasonable suspicion for the stop.  Hargrove v. State, 40 S.W.3d 556, 559
(Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).









Because I believe that
there was reasonable suspicion to stop the vehicle, I would hold that the trial
court properly denied Appellant=s motion to suppress and affirm the trial court=s
judgment.  I respectfully dissent. 

 

 

BOB MCCOY

JUSTICE

 

PUBLISH

 

DELIVERED:  August 10, 2006

 

 

 

 











[1]The trial court=s judgment recites that this is a
plea bargain case, and the trial court=s certification of Appellant=s right to appeal states this is a
plea bargain case and the court has given Appellant the right to appeal the
ruling on the motion to suppress.  In
fact, the record reflects that there was no plea bargain agreement, but the
court did grant Appellant permission to appeal from the denial of his motion to
suppress. 





[2]Appellant challenged the alleged
illegal search under the United States and Texas constitutions and the Texas
Code of Criminal Procedure.





[3]The
officer was not asked whether the black bag was still inside the residence when
he arrived.  In his argument to the trial
court, the prosecutor stated that when the homeowner returned to the residence
with the police, the black bag that he had previously observed was gone.





[4]The record from the suppression
hearing does not indicate what, if any, items were found in the black bag or in
the residence, and whether there was in fact a Alab@ located in the residence.





[5]This
is true even if the trial court gave the wrong reason for its ruling.  Armendariz, 123 S.W.3d at 404.     





[6]We have renumbered and italicized
the footnotes appearing in the excerpt so as to distinguish the footnotes in Kothe
from the footnotes appearing in this opinion.





[7]Officer Bailey did testify that he
was advised by Sergeant Loeffert that at the time of the traffic stop Appellant
was in the back seat, crouched down with a jacket over his head.  Sergeant Loeffert did not testify at the
suppression hearing.





[8]The transportation code provides
which vehicles are required to be equipped with Aelectric turn signal lamps@ and the specifications for these
signal lamps.  Id. ' 547.324.  Because the testimony at the suppression
hearing does not indicate the type of vehicle Appellant was riding in, it is
impossible to determine whether that vehicle was required to be equipped with
electric turn signal lamps.  See id.
(providing which vehicles are exempt from the requirement of being equipped
with electric turn signal lamps).





[9] See McVickers v. State,
874 S.W.2d 662, 663-66 (Tex. Crim. App. 1993) (holding evidentiary rules
regarding hearsay apply at a motion to suppress hearing; case was reversed
because of improper objected-to hearsay testimony that other officers told
witness that defendant=s vehicle had been stopped because
he had run a red light); Tores v. State, 518 S.W.2d 378, 379-81 (Tex.
Crim. App. 1975) (restating general rule that an officer has probable cause to
lawfully stop a vehicle and arrest a passenger when that officer observes a
traffic violation, failure to stop at stop sign); Walter v. State, 997
S.W.2d 853, 858 (Tex. App.CAustin 1999) (holding arresting officer=s stop of defendant=s truck was valid because the
officer witnessed the defendant commit a traffic offense, failure to properly
signal before a turn, which the court stated was Aan objective basis for stopping the
truck,@ but not mentioning the concept
that when an officer makes an objective observation the risk of allowing the
officer=s individual perception to justify
a stop is not present), rev=d on other grounds, 28 S.W.3d 538 (Tex. Crim. App. 2000).

 





[10]The dissent asserts that the
testimony in the instant case supports the position that the stop was
reasonable.  However, in all the cases
cited, the arresting officer was the witness who testified that he had actually
seen the traffic violation.  See Texas
Dep=t of Pub. Safety v. Shellberg, 2005 WL 1981488, at *3 (Tex. App.CCorpus Christi Aug. 18, 2005, no
pet.) (mem. op.); Hargrove v. State, 40 S.W.3d 556, 557 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d); Texas Dep=t of Pub. Safety v. Walter, 979 S.W.2d 22, 29 (Tex. App.CHouston [14th Dist.] 1998, no
pet.).  Additionally, we note that Hargrove
and Walter were issued before the court of criminal appeals= Ford opinion.  In Shellberg, the defendant did not
challenge on appeal the arresting officer=s testimony that the traffic stop was proper because of the
defendant=s failure to signal; perhaps that
is the reason why Shellberg makes no mention of the court of criminal
appeals= holding in Ford.  





[11]See
also Torres v. State, 182 S.W.3d 899, 902-03 (Tex. Crim. App. 2005)
(reaffirming Ford>s
statement that A[m]ere
opinions [of police officers] are ineffective substitutes for specific,
articulable facts@ and
holding that the facts and circumstances known personally to the police officer
who was called to  scene of traffic
accident by other officers, or which had been conveyed to him by reasonably
trustworthy sources, did not establish probable cause to arrest appellant for
driving while intoxicated).

 





[1]Officer
Bailey further testified that he was advised by Sergeant Loeffert that at the
time the stop was made, Appellant was in the back seat, crouched down with a
jacket over his head.  The majority does
not question the fact that Bailey was also told this fact rather than observing
it himself.