**Rafael Pepen CEDANO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–99–01140–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 18, 2000.

William K. Goode, Houston, for appellant.

John B. Holmes, Calvin Hartmann, Houston, for State.

Panel consists of Justices O'CONNOR, NUCHIA, and DUGGAN.*

## OPINION

SAM NUCHIA, Justice.

Following the trial court's denial of his motion to suppress the evidence, appellant, Rafael Pepen Cedano, was found guilty, in a non-jury trial, of possession with intent to deliver cocaine weighing at least 400 grams. The trial court assessed punishment at 22 years confinement. We affirm.

## BACKGROUND

A confidential source notified police that an inmate in the county jail had information that a large drug transaction was about to take place. Police officer Mark

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Boyle met with the inmate in a room at the jail. The inmate told Boyle that he could make a phone call and arrange the place for pick up and delivery of cocaine. The inmate said the contact's name was Rafael, but was called Ralph. He said he knew Ralph, had done many deals with him, and could set up a deal over the phone. He knew the telephone number by memory. Boyle directed the inmate to set up a drug delivery.

The inmate made two or three calls to Ralph that afternoon on Boyle's cell phone in Boyle's presence. He addressed the person on the other end of the line as Ralph and arranged for the delivery of three kilos of cocaine for the price of $16,000 per kilo. Ralph wanted to make the delivery at a hotel in the south part of town. The Houston narcotics squad, working with Boyle, selected the Residence Inn, and the inmate set it up with Ralph for delivery there that evening at room 113, a room Boyle knew to be empty. Boyle heard the inmate's side of the conversations with Ralph, and the inmate told him what Ralph said.

The inmate described Ralph as a Puerto Rican male, five feet 10 inches tall, weighing approximately 175 to 180 pounds, with short black hair and a light beard. He described the vehicle Ralph would be arriving in as a dark colored, newer model Nissan that had a hidden compartment in the back seat.

Boyle went to the Residence Inn and saw appellant and another man, Edwin Quiroz, in a late model Nissan pull into the parking lot slowly while looking over their shoulders. Both men in the Nissan appeared to fit the description given to Boyle by the inmate. The driver drove slowly to the part of the complex where room 113 was located and parked at an angle. Appellant got out of the passenger side of the car, and Boyle saw that he fit the description of the contact.

Appellant walked to room 113, and Boyle followed him. When appellant got to room 113, he knocked and got no answer. He used a cell phone to make a call. Boyle was 10 to 15 feet away and heard appellant say, "I'm here. Where are you at?" Boyle, who was wearing a standard narcotics raid jacket with "Houston Narcotics Police" in yellow letters on the front and back, walked toward appellant. Appellant appeared shocked, turned his back, and started walking away. Boyle identified himself as a police officer and said he wanted to talk to appellant. Boyle asked whether he was staying at the hotel and who he was visiting. Appellant responded that he was visiting a friend, but he could not remember his friend's name or what room he was staying in. Appellant appeared fidgety and nervous. When asked if he was carrying a weapon, appellant did not respond and instead reached toward his pocket. Boyle grabbed his hand and felt a bulge in his pocket. Boyle knew the bulge was not a weapon but thought he knew what it was. He pulled out a small bag of cocaine. Boyle arrested appellant for possession of cocaine. He searched appellant and found a small piece of paper in appellant's shirt pocket with the number 113 written on it.

Boyle and appellant returned to the parking lot where other officers were waiting with the driver of the car. Boyle noted that the driver did not bear a close resemblance to the inmate's description of the contact. The police obtained written consent from the driver of the vehicle to search the car. With the assistance of a canine unit, they found six bricks of cocaine, weighing approximately three kilos, in a secret compartment in the back seat.

## DISCUSSION

In two points of error, appellant contends (1) that the trial court abused its discretion in denying his motion to suppress the small bag of cocaine and a note and (2) that the evidence was insufficient to support a conviction of possession with intent to distribute.

## Motion to Suppress

 Unless there is an abuse of discretion, a trial court's ruling on a motion to suppress evidence will not be set aside. *Taylor v. State*, 945 S.W.2d 295, 297 (Tex. App.—Houston [1st Dist.] 1997, pet ref'd). The Court will afford almost total deference to a trial court's determination of historical facts that the record supports, especially when the findings are based on the evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). The fact finder is the sole judge of the witness's credibility and may accept or reject any or all of the witness's testimony. *Taylor*, 945 S.W.2d at 297. In reviewing a ruling on a question of application of law to facts, we review the evidence in the light most favorable to the trial court's ruling. *Guzman*, 955 S.W.2d at 89. However, we review *de novo* a trial court's determination of reasonable suspicion and probable cause. *Id.* at 87.

 In his first point of error, appellant contends that the trial court abused its discretion by overruling his motion to suppress evidence obtained illegally.[1] He argues that the plain-feel doctrine is inapplicable to the small bag of cocaine found in his pocket. He also argues that the court should have suppressed evidence of the note found in his shirt pocket because it was obtained as fruit of an unlawful arrest for possession.

 Warrantless arrests and searches are subject to the same probable cause standard as those involving warrants. *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 566, 91 S.Ct. 1031, 1035–36, 28 L.Ed.2d 306 (1971); *Rojas v. State*, 797 S.W.2d 41, 43 (Tex.Crim.

App.1990). The analysis of probable cause is based on the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Whaley v. State*, 686 S.W.2d 950, 951 (Tex. Crim.App.1985). The test for whether the officer had probable cause for a warrantless arrest is whether, at the moment of arrest, the facts and circumstances within the officer's knowledge, and of which the officer had reasonably trustworthy information, were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense. *Guzman*, 955 S.W.2d at 90. Even though an officer testifies that a suspect was not under arrest at the time of the search, appellate courts can uphold the trial court's ruling on the defendant's motion to suppress on a ground not articulated by the arresting officer in his testimony. *See Scott v. United States*, 436 U.S. 128, 139, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978); *Williams v. State*, 726 S.W.2d 99, 101 (Tex.Crim.App.1986).

 In this case, Boyle was present when the inmate made the arrangement for delivery of the cocaine to room 113 of the Residence Inn. He watched appellant and Quiroz drive onto the parking lot in the late-model Nissan. When appellant got out of the car, Boyle saw that he fit the description given by the inmate. Appellant went directly to room 113 and knocked on the door. When there was no response, he used a cell phone to make a call and said, "I'm here. Where are you at?" At that time, Boyle had probable cause to arrest appellant for attempted delivery of cocaine. *See Brent v. State*, 916 S.W.2d 34 (Tex.App.-Houston [1st Dist] 1995, pet. ref'd) (holding an affidavit

---

1. Appellant does not indicate whether he is asserting error under the federal or state constitutions. In fact, he makes no distinction whatsoever. According to *Heitman v. State*, attorneys should carefully separate federal and state issues into separate grounds, and the Court may overrule the ground as multifarious if there is a failure to provide sufficient distinction. 815 S.W.2d 681, 690–91 n. 23 (Tex.Crim.App.1991). However, state standards for review of investigative stops are the same as federal standards. *See Strickland v. State*, 923 S.W.2d 617, 619 n. 1 (Tex.App.— Houston [1st Dist.] 1995, no pet.). Thus, we will examine appellant's claims solely under article 1, section nine of the Texas constitution.

stating that a credible inmate knew appellant and gave accurate information regarding the drug transaction and was present during a phone conversation between appellant and the murder victim confirming the location of the transaction stated probable cause to arrest appellant for delivery of cocaine). Therefore, Boyle could search appellant incident to the arrest, and the trial court did not err in denying appellant's motion to suppress the bag of cocaine and the note. *See Allridge v. State*, 850 S.W.2d 471, 491(Tex.Crim.App.1991); *Williams*, 726 S.W.2d at 101.

We overrule appellant's first point of error.

### Insufficiency of the Evidence

■ In his second point of error, appellant asserts that the evidence is insufficient to sustain his conviction. Because appellant does not explicitly state whether he is asserting factual or legal insufficiency of evidence, we will assume he is challenging both.

■ The standard for reviewing the legal sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

■ The elements of unlawful possession are that the defendant exercised care, custody, control, and management over the contraband and that the defendant knew that the substance being possessed was contraband. *Id.* The State need not show that the defendant exercised exclusive control, but when the defendant does not have exclusive control, the State must show additional affirmative links between the defendant and the contraband. *Villegas v. State*, 871 S.W.2d 894, 896 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Mere presence is insufficient to show that a person possessed the

drug. *Chavez v. State*, 769 S.W.2d 284, 288 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd).

Appellant asserts that there is insufficient evidence to show beyond a reasonable doubt that he "exercised care, custody, and management" over the cocaine in the car. Appellant relies on *Moreno v. State*, 821 S.W.2d 344 (Tex.App.—Waco 1991, pet. ref'd). In *Moreno,* the passenger was convicted of possession of over 400 grams of cocaine. *Id.* at 348. The court held that the State failed to prove beyond a reasonable doubt that the passenger exercised control when the only affirmative link between the passenger and the cocaine found under the hood of the car was the cocaine seized in his wallet. *Id.* at 352.

■ Here, there are many more affirmative links between appellant and the cocaine seized from the car. Appellant came to the location designated for delivery of three kilos of cocaine. He matched the physical description, and his name was Ralph-the name given by the inmate. He was seen getting out of the car described by the inmate, walking directly to the hotel room where the sale was to take place, and knocking on the door of the room. The police officer heard the appellant say on the cell phone, "I'm here. Where are you at?" The officer discovered this same message on his personal cell phone, showing that it was the appellant who had been given Boyle's cell phone number to make contact for delivery of the cocaine. When confronted by Boyle, appellant acted nervous and tried to walk away. The drugs were hidden in a secret compartment in the car, as described by the inmate. A rational fact finder could have found affirmative links between appellant and the cocaine hidden in the car.

■ In reviewing the factual sufficiency of the evidence, we view the evidence without the prism of "in the light most favorable to the verdict." *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). We may not substitute our judg-

ment for that of the fact finder, and may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

Appellant points to the following evidence as establishing his innocence: (1) he was a mere passenger in the car; (2) the three kilos of cocaine were hidden in a secret compartment; (3) there was no evidence of how long the drugs or appellant had been in the car; (4) no other property could be connected to appellant; (5) appellant did not have possession of the remote control device and his fingerprints were not on the packages of cocaine; (6) there were no other drugs or narcotics paraphernalia in the rest of the car; (7) police did not discover the wires leading to the secret compartment until the back seat was removed; (8) appellant was seen seated in the front passenger seat and there was no evidence that he did anything in the rear of the car.

These factors are not evidence that appellant did not exercise care, custody, control, and management over the cocaine hidden in the secret compartment in the car. Appellant's evidence only suggests that he did not have exclusive control or possession of the cocaine in the car. We hold that appellant has not shown that the verdict is so contrary to the overwhelming weight of evidence as to be manifestly wrong or unjust.

We overrule appellant's second point of error.

We affirm the judgment of the trial court.