Opinion issued November 30, 2006

 





 





 



 



In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-01125-CR
____________
 
LEVINCER SWANSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 1006136
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Levincer Swanson, guilty of the offense of possession
of cocaine weighing less than one gram.


 After finding true the allegations in two
enhancement paragraphs that appellant had previously been convicted of two felony
offenses, the trial court assessed punishment at confinement for three years. In three
points of error, appellant contends that the evidence is legally and factually
insufficient to support his conviction and that the trial court erred in assessing his
punishment “without a fact-finding that the second prior conviction was for an
offense that occurred after the first prior conviction became final.”
          We affirm.
Factual and Procedural Background
          Houston Police Officer R. B. Rodriguez testified that at approximately 11:45
p.m. on November 3, 2004, he and Officer J. Crawford, in two separate, marked
patrol cars, pulled into a convenience-store parking lot where, from “20 to 25 feet”
away, they “observed three males in a vehicle and one was drinking a beer inside the
vehicle.” Rodriguez and Crawford observed the three males in the car for “maybe
two minutes or so” before approaching the car. Inside the car were appellant and two
other men. The two officers exited their patrol cars, and Crawford walked up to the
driver’s side of the car and Rodriguez walked up to the passenger side. As he got
closer to the passenger side of the car, Rodriguez “noticed that all three occupants
were watching Officer Crawford, and then the back-seat passenger began stuffing
something down, and [Rodriguez] dealt with him.” Rodriguez did not see appellant
doing anything because Rodriguez “was dealing with the back seat passenger.” 
Rodriguez identified appellant as the front-seat passenger in the car. 
          Houston Police Officer J. Crawford testified that he went to the parking lot
with Officer Rodriguez for the purpose of investigating narcotics activity. Although
there were several cars in the parking lot, Crawford pulled up behind the car in which
appellant sat because it “was the only one that had people sitting in it.” At that time,
Crawford’s marked patrol car was “[w]ithin five feet” of the car in which appellant
sat. Crawford was suspicious of the situation because “there is a high level of
narcotics activity that takes place at that location” and he “saw the three people sitting
there and [he] observed the passenger drinking beer as [he] was sitting and watching
them.” At that time, Crawford was “[n]o more than . . . 20 feet” from the front seat
of the vehicle. He could tell that the passenger was drinking a beer because
Crawford’s “headlights were flashed inside [appellant’s] vehicle.” He noted that a
city ordinance prohibits the consumption of alcohol on the store’s premises because
“they don’t have a license for it” and there are “signs in front of the business that say
you’re not allowed to consume alcoholic beverages on the premises.”
          Crawford further testified that as he “approach[ed] the driver’s side of the
vehicle and Officer Rodriguez was approaching the passenger side,” he saw that
appellant, the front-seat passenger, “had something in his hand, cupped in his hands,
his left hand and was looking at [Crawford] and put it underneath his left leg.” 
Appellant had a closed fist, and Crawford “didn’t see anything sticking out” of
appellant’s hand. Appellant then placed his left hand “underneath his left leg, then
he came out with it open.” At that point, Crawford “then went around the front of the
vehicle and approached the passenger side” and “asked [appellant] to step out of the
vehicle” because Crawford “didn’t know what [appellant] had placed under his leg.” 
After appellant exited the car, appellant did not have anything in either hand, but
Crawford noticed that “[t]here was a small straw . . . sitting underneath [appellant’s]
leg where he was sitting.” Based on his training and experience, Crawford opined
that “[a] straw that small” is only “used for one purpose and that is to use illegal
drugs.” The length of the straw was approximately “[a]n inch, maybe a little bit
more,” and was melted on one end for presumably the purpose “to keep from hurting
their nose when they stick it up there.” After he found the straw, Crawford saw “a
white substance inside the straw” and “tested it with a cocaine tester, the residue” and
“found it to test positive for cocaine.” Crawford noted that the driver’s hands “didn’t 

go anywhere near the passenger seat” and that he did not see the back-seat passenger
make any movements toward the front-passenger seat.
          Houston Police Department Crime Lab chemist J. Miller testified that he
performed a scientific analysis on the straw in question. After examining the straw,
he “found that there was a white residue inside of the straw” and “performed a
microchemical test and GCMS test on that residue.”


 When Miller “examined [the
straw], [he] found that there wasn’t enough of [the] white powdery residue to simpl[y]
dump it out, if you will, and test what came out of the straw, so [he] had to scrape a
small portion of it out, and it was actually the scrapings of that residue that [he]
tested.” He “found that the residue contained cocaine.” Miller testified that it was
not possible to weigh the scrapings using conventional means, such as a balance. 
Therefore, he “reported it out as a trace amount, less than one gram,” and described
this as standard procedure in residue cases.
          During the punishment phase of the trial, after the jury returned a guilty verdict,
appellant pleaded “not true” to the allegations in the two enhancement paragraphs. 
After appellant entered his pleas, he objected to proceeding further because “the
charging instrument by which [he was] given notice has left out significant language,
namely that the second previous felony conviction is for an offense that occurred
subsequent to the first previous conviction having become final. In other words, the
second enhancement paragraph does not have language saying the conviction in
Cause No. 9418227 occurred after the conviction in 579650 became final, which is
required under Section 12.42 in order to enhance the punishment range to that of a
second degree felony.” The trial court then allowed the proceedings to continue, and
in the presence of the jury, entered on appellant’s behalf a plea of “not true” to both
enhancement paragraphs. Appellant stipulated that he “is the person identified in
three . . . pen packets,” and made clear that he was “stipulating to identity only.” 
After the trial court admitted two penitentiary packets, State’s exhibits two


 and
three,


 into evidence, the State rested.
          Appellant then objected to the jury charge because “the paragraph concerning
enhancement paragraph two of the indictment, this charge says the indictment alleges
that the language that’s in 12.42, and it doesn’t. The indictment doesn’t allege that,
so this charge does not comport with the indictment.” Then, appellant withdrew his
request that the jury decide punishment and allowed the trial court to assess
punishment. The trial court found true the allegations in both enhancement
paragraphs and assessed punishment at confinement for three years.
Legal and Factual Sufficiency
          In his first and second points of error, appellant argues that the evidence is
legally and factually insufficient to support his conviction because (1) he was not in
control of the car in which the straw was found; (2) two other men were inside the
car; (3) the back-seat passenger was directly behind appellant in the car and was
observed “stuffing something down” as the officers approached the car; (4) no
contraband other than the one straw was found during a search of the men and the car;
(5) there was no evidence that appellant was under the influence of drugs or
narcotics; (6) he made no admissions regarding possession of the straw; (7) the
residue in the straw was not visible without looking in the end of the straw; (8) the
officers only observed appellant for “maybe two minutes”; (9) Officer Rodriguez did
not see anything in appellant’s hands; (10) Officer Crawford admitted that he did not
actually see anything in appellant’s hand, but “believed” that appellant put something
under his leg; (11) there was no evidence that appellant attempted to evade arrest or
flee; and (12) the straw was an inch long, and the residue inside weighed .001 grams.
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We note that
the trier of fact is the sole judge of the weight and credibility of the evidence. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the fact finder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).
          In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if proof of guilt is so obviously
weak as to undermine confidence in the jury’s determination, i.e., that the jury’s
verdict seems “clearly wrong and manifestly unjust,” or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, No. PD-469-05, 2006 WL 2956272, at *8 (Tex. Crim.
App. Oct. 18, 2006). In performing a factual sufficiency review, we are to give
deference to the fact finder’s determinations, including determinations involving the
credibility and demeanor of witnesses. Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). We may not substitute our judgment for the fact finder’s. Watson,
2006 WL 2956272, at *10.
          A person commits an offense if he knowingly or intentionally possesses
cocaine in an amount less than one gram by aggregate weight, including any
adulterants or dilutants. Tex. Health & Safety Code Ann. § 481.102(3)(D)
(Vernon Supp. 2005), § 481.115(a), (b) (Vernon 2003). To establish unlawful
possession of a controlled substance, the State must show that a defendant (1)
exercised care, custody, control, or management over the controlled substance and (2)
knew that he possessed a controlled substance. See id. § 481.002(38) (Vernon Supp.
2005), § 481.112(a) (Vernon 2003); King v. State, 895 S.W.2d 701, 703 (Tex. Crim.
App. 1995); Roberson v. State, 80 S.W.3d 730, 734–35 (Tex. App.—Houston [1st
Dist.] 2002, pet. ref’d). The State may prove that a defendant knowingly possessed
contraband by offering circumstantial evidence affirmatively linking him to the
contraband. See Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). The
State need not show that the defendant exercised exclusive control over the controlled
substance, but, when the defendant does not have exclusive control, the State must
show additional affirmative links between the defendant and the contraband. Cedano
v. State, 24 S.W.3d 406, 411 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The
affirmative links must raise a reasonable inference that the defendant knew of and
controlled the contraband. Dickerson v. State, 866 S.W.2d 696, 700 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d). 
          Factors that may be considered to establish affirmative links include (1) the
defendant’s presence when the search was executed; (2) whether the narcotics were
in plain view; (3) the defendant’s proximity to and accessibility of the narcotics;
(4) whether the defendant was under the influence of narcotics when arrested; (5) the
defendant’s possession of other narcotics when arrested; (6) the defendant’s
incriminating statements; (7) the defendant’s attempted flight; (8) the defendant’s
furtive gestures; (9) the presence of an odor of the narcotics; (10) the presence of
other narcotics or narcotics paraphernalia; (11) the defendant’s ownership or right to
possession of the place where narcotics were found; and (12) whether the narcotics
were found in an enclosed place. Williams v. State, 859 S.W.2d 99, 101 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d). Despite this list of factors, there is no
set formula necessitating a finding of an affirmative link; rather, affirmative links are
established by the totality of the circumstances. Sosa v. State, 845 S.W.2d 479, 483
(Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).
          Here, Officer Crawford testified that, in the front-seat area where appellant was
sitting, he found “a small straw” that tested “positive for cocaine.” He saw that
appellant “had something in his hand, cupped in his hands, his left hand” and then
“put it underneath his left leg.” When appellant got out of the car, “there was nothing
in [appellant’s] left hand.” Crawford further testified that the driver’s hands “didn’t
go anywhere near the passenger seat” and that he did not see the back-seat passenger
make any movements toward the front-passenger seat. Also, HPD Crime Lab chemist
Miller testified that, upon examining the recovered straw, he “found that the residue
contained cocaine.”
          Viewing all the evidence in the light most favorable to the jury’s verdict, we
conclude that a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Furthermore, viewing the evidence neutrally, we
conclude that the evidence is not so obviously weak such that the jury’s verdict seems
“clearly wrong and manifestly unjust” or that the proof of guilt is against the great
weight and preponderance of the evidence. Accordingly, we hold that the evidence
is legally and factually sufficient to support appellant’s conviction.
          We overrule appellant’s first and second points of error.
Sentencing Enhancements
          In his third point of error, appellant argues that the trial court erred in assessing
punishment “without a fact-finding that the second prior conviction was for an
offense that occurred after the first prior conviction became final.” Appellant
contends that, because the indictment is void of “any allegation that the second prior
felony conviction was for an offense committed after the first felony conviction
became final” and “[t]he record does not contain any pleading by the State alleging
the statutorily required sequence as regards the prior felony convictions,” the proper
punishment range should have been “6 months to 2 years in the state jail.”
          Texas Penal Code section 12.42(a)(2) provides, 
If it is shown on the trial of a state jail felony punishable under Section
12.35(a) that the defendant has previously been finally convicted of two
felonies, and the second previous felony conviction is for an offense that
occurred subsequent to the first previous conviction having become
final, on conviction the defendant shall be punished for a second-degree
felony.
 
 Tex. Pen. Code Ann. § 12.42(a)(2) (Vernon Supp. 2005) (emphasis added). A
second-degree felony is “punished by imprisonment in the institutional division for
any term of not more than 20 years or less than 2 years” in addition to “a fine not to
exceed $10,000.” Tex. Pen. Code Ann. § 12.33 (Vernon 2003).
          It is well settled that it is unnecessary to allege prior convictions for
enhancement of punishment with the same particularity that is required in charging
the primary offense. See Freda v. State, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986);
Chavis v. State, 177 S.W.3d 308, 312 (Tex. App.—Houston [1st Dist.] 2005, pet.
ref’d). The purpose of an enhancement allegation is to provide the accused with
notice of the prior conviction upon which the State relies. Chavis, 177 S.W.3d at 312. 
The State, in alleging prior convictions for enhancement of punishment, should
include in its allegations the court in which the conviction was obtained, the time of
the conviction, and the nature of the offense. Id. However, enhancement-of-punishment allegations are sufficient when the prior convictions are described as
felonies, the exact nature of the offenses is given, the cause numbers of the
convictions are obtained, and the dates of such convictions are set. Id. at 312–13. 
Furthermore, it is not necessary that enhancement allegations be included in an
indictment. See Brooks v. State, 957 S.W.2d 30, 32 (Tex. Crim. App. 1997). A
defendant is entitled to notice of prior convictions to be used for enhancement, but
alleging an enhancement in the indictment is not the only reasonable method of
conveying such notice. Id. at 33. Prior convictions used as enhancements must be
pleaded in some form, but they need not be pleaded in the indictment. Id. at 34. 
          When the State seeks to punish a defendant as an habitual offender, and thus
includes two felony enhancement paragraphs in the indictment, the State must show
that the defendant committed each successive felony after the prior conviction was
final. Tex. Pen. Code Ann. § 12.42(a)(2) (Vernon Supp. 2005). “[A]n appealed prior
conviction alleged in an indictment for enhancement purposes becomes final when 

the appellate court issues its mandate affirming the conviction.” Beal v. State, 91
S.W.3d 794, 796 (Tex. Crim. App. 2002).
          In this case, the State alleged in the indictment that,
Before the commission of the offense alleged above, (hereafter styled
the primary offense), on January 3, 1991, in Cause No. 579650, in the
338th District Court of Harris County, Texas, the Defendant was
convicted of the felony of possession of a controlled substance.
 
Before the commission of the primary offense, the Defendant committed
the felony of possession with intent to deliver a controlled substance and
was finally convicted of that offense on February 8, 1995, in Cause No.
9418227, in the 351st District Court of Harris County, Texas.
 
Thus, for the State to show that appellant was subject to punishment as an habitual
offender it was required to show, beyond a reasonable doubt, that after appellant was
finally convicted of the felony offense of possession of a controlled substance in
Cause No. 579650, he committed the felony offense of possession with intent to
deliver a controlled substance and was finally convicted of that offense in Cause No.
9418227 previous to committing the primary offense. Tex. Pen. Code Ann. §
12.42(a)(2). Absent such a showing, appellant could not be sentenced as an habitual
offender. See id.
 

          During the punishment phase of the trial, the State introduced into evidence
exhibits two and three with appellant stipulating as to “identity only.”


 State’s exhibit
two, which is a penitentiary packet, shows that appellant was convicted of possession
of a controlled substance on January 3, 1991, in Cause No. 579650, in the 338th
District Court of Harris County, Texas. State’s exhibit three, which is also a
penitentiary packet, shows that appellant was convicted of possession with intent to
deliver a controlled substance on February 8, 1995, in Cause No. 9418227 in the
351st District Court of Harris County, Texas. It also shows that appellant committed
that offense on August 4, 1994. The record does not indicate whether appellant
appealed either of the previous convictions used for enhancement purposes. 
          The burden is on the State to make a prima facie showing that any prior
conviction alleged for enhancement became final before the commission of the
primary offense, and once such a showing is made, the burden shifts to the defendant
to prove otherwise. Jones v. State, 711 S.W.2d 634, 635 (Tex. Crim. App. 1986). 
Here, the State met its burden of a prima facie showing at trial that appellant had
previously been convicted of two felonies and that the second previous felony was
for an offense that occurred subsequent to the first previous conviction having
become final. See Tex. Pen. Code Ann. § 12.42(a)(2). Appellant offered no
evidence to show that his previous conviction of possession of a controlled substance
had not become final before he committed the offense of possession with intent to
deliver a controlled substance on August 4, 1994. Accordingly, we hold that the trial
court did not err in assessing appellant’s punishment under section 12.42(a)(2) of the
Texas Penal Code.
          We overrule appellant’s third point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).