# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00264-CR

**Jesse Rodriguez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. D-1-DC-05-205463, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jesse Rodriguez appeals his conviction for possession of cocaine with intent to deliver in an amount greater than four grams but less than two hundred grams. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), .112(a) (West 2003). After finding an enhancement charge to be true, the trial court assessed punishment at fifteen years' confinement. Appellant contends that the evidence at the bench trial was legally and factually insufficient to support his conviction in that the evidence failed to link him to the contraband. Because we conclude that the evidence was sufficient and links appellant to the contraband, we affirm the judgment of conviction.

## FACTUAL BACKGROUND

Following an investigation beginning in August 2005 that included several days of surveillance of a residence at 5107 Savorey Lane in Austin, on October 17, 2005, Michael Mancias, a narcotics investigator with the Texas Department of Public Safety, obtained and executed

a search warrant for the premises. Prior to the search, the officers detained appellant in the parking lot of a local grocery store and then transported him back to the premises. During the course of the search, officers found cocaine, marijuana, and drug paraphernalia in a chest of drawers and closet in the master bedroom. Eleven bags of powder cocaine and one bag of crack cocaine were found in the dresser.

The officers found a "sifter" for marijuana, two scales, and a surveillance monitor in the master bedroom. Mancias testified at trial that he also found a glass pipe, of the kind used to smoke marijuana, and a box of insulin syringes on the dresser. The officers also seized surveillance equipment from the premises, including a monitor in the master bedroom and cameras placed outside the house; one camera was positioned at the front door, and another was housed in plexiglass in a birdhouse in a tree on the premises.

Following the search, the officers placed appellant under arrest. Tests performed on the drugs confirmed the bags contained cocaine in an amount exceeding four grams.

**ANALYSIS**

In three issues, appellant contends that the evidence is legally and factually insufficient to support his conviction. Specifically, appellant asserts that the State failed to affirmatively link him to the drugs found in the residence. Because appellant was arrested away from the premises, the house was leased in another person's name, and other persons had access to the house, appellant urges that he was not in exclusive control of the premises, other parties had superior links to the contraband, and the links are therefore insufficient to connect him to the

2

contraband. Appellant does not dispute the weight and composition of the contraband, nor does he challenge the search warrant.

***Standard of Review***

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005). Appellant contends that a rational jury could not have found beyond a reasonable doubt that he exercised care, custody, control, or management over the cocaine found in the master bedroom of the residence because the State's circumstantial evidence failed to link him to the contraband. Appellant's sufficiency complaint pertains only to the element concerning whether he possessed the controlled substance, and we limit our appellate review to that issue. Our legal sufficiency review turns on whether enough evidence existed for any rational fact finder to find beyond a reasonable doubt that appellant had knowledge of the presence of the contraband.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact

3

finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414, 417; *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000). To reverse on grounds of factual sufficiency, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this Court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the fact finder or because we disagree with the fact finder's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact finder's. *Johnson*, 23 S.W.3d at 13; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the fact finder's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and [the fact finder was] in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 18. Thus, we must give due deference to the fact finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 20.

### The Existence of Links

For the State to obtain a conviction for possession with intent to deliver, it was required to prove that appellant (i) exercised care, custody, control, or management over the controlled substance; (ii) intended to deliver the controlled substance to another; and (iii) knew that

4

the substance in his possession was a controlled substance. *See* Tex. Health & Safety Code Ann. §§ 481.002(38), .112(a); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Roberson v. State*, 80 S.W.3d 730, 734-35 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). When the accused is not in exclusive possession of the place where the substance is found, his knowledge of and control over the contraband cannot be established unless there are additional independent facts and circumstances which link him to the contraband. *Poindexter*, 153 S.W.3d at 406; *see also Evans*, 202 S.W.3d at 161-62. Whether the State's evidence linking a defendant to the contraband in question is direct or circumstantial, it must establish, "to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405-06 (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). The force of these links need not be such as to exclude every other alternative hypothesis except the defendant's guilt. *Brown*, 911 S.W.2d at 748.

Investigator Mancias testified that beginning in August 2005, he observed appellant on several occasions exit the residence at 5107 Savorey Lane during early morning hours. Also on these occasions, he observed a red pickup truck parked in front of the house and saw appellant depart the residence in the truck. The red pickup truck was registered in appellant's name. After appellant was observed at the residence on the morning of the search, he left the residence in the red pickup. A few minutes later, the officers observed a white van back into the driveway of the residence. The occupants, who waited outside in the van, were later identified as Johnny Guana and Tanya de la Santos. The white van had been observed in an earlier surveillance at the residence and was included in the search warrant. Neither Guana nor de la Santos entered the residence before they were

5

detained by the officers for the duration of the search of the residence. They appeared sleepy, incoherent, and under the influence of some substance, "possibly a depressant-type narcotic." In a search of the van, the officers found a handgun and a machete. De la Santos was in possession of a crack pipe. Guana appeared to be living in the van. Neither Guana nor de la Santos were arrested.

Appellant was detained inside the house during the execution of the search. He alerted Mancias that he was diabetic and needed insulin, which he kept in the refrigerator. Prescription medicine in appellant's name was found in the master bedroom. The officers also found a box of insulin syringes in the closet of the master bedroom. Cocaine, marijuana, and scales were also found in the master bedroom. A glass pipe was found on the top of the dresser.

In the same dresser drawer as the cocaine, Mancias found several documents linking appellant to the Savorey Lane residence. The documents included personal correspondence addressed to appellant at the Savorey Lane residence and a photograph of appellant with a female. Another letter dated 2003 was addressed to appellant at a different address, 506 Tillery Street. Other papers in appellant's name found in the drawer with the drugs included a surety bond receipt naming the appellant and his attorney, a receipt for repair from an electronics store, and a receipt for the purchase of tires.

Mancias testified about the items demonstrating appellant's distribution business, including a box containing lists of telephone numbers, the packaging of the individually wrapped bags of measured cocaine, scales, and cameras and monitoring equipment found in the house and yard. Mancias testified that surveillance equipment and monitors are commonly used by drug dealers to alert occupants to law enforcement and for protection against "drug rip-offs by other

6

persons." Mancias observed that there were three large dogs in the yard of the residence and that two appeared to be aggressive.

As the search was being conducted inside the house, appellant was taken outside. At one point, a car drove up to the residence, and a man exited the vehicle and approached appellant. They made eye contact and began to speak. When appellant raised his handcuffed arms to make the cuffs visible, the "individual abruptly ended the conversation, got back in his car and left."

The residence at 5107 Savorey Lane had three bedrooms, including a master bedroom. The leasing agent for the Savorey Lane house testified that Mary Rodriguez leased the house beginning in 1994. She had also signed the recent lease covering the period from August 2004 through July 2005. The utilities were listed in the name of Mary Elias, who the agent identified as the same person as Mary Rodriguez. On Mary Rodriguez's application to rent the house, she stated that her six children would live at the residence. The agent had seen appellant at the residence but did not know if he lived there.

Mary Elias testified on appellant's behalf that she had been married to the appellant for twelve years and that he would stay with her "off and on," but that he had girlfriends. He kept his medications and some clothes at the house and Elias would wash his clothes "and put them up." When he stayed at the house, he would stay in the master bedroom with her. But she testified, appellant did not live at the house. Elias was not aware of any drugs and did not know where they came from. Elias testified that Guana and de la Santos had spent some time in her bedroom on a date she could not recall.

7

Appellant's sister testified that Mary Elias and appellant were married but that he lived at her house on Tillery Street and that he received mail at that address. She acknowledged that appellant sometimes spent time and sometimes spent the night at the Savorey Lane house.

Johnny Guana testified that he was on probation for possession of cocaine in Caldwell County. Although the white van belonged to him, it was not in his name. He would drive the van to 5107 Savorey Lane, because "[he] was handyman for the people who lived there." He testified that he worked for appellant's company. Guana also testified that he would sometimes stay at the house, but that he spent the night in his van. He acknowledged that he had been in the house with de la Santos, but denied that they had been in the master bedroom. He knew appellant to live at the residence and that is where Guana reported for work and received his job assignments from appellant. Guana had never met with appellant at the Tillery address. Guana acknowledged that he and de la Santos had been under the influence of drugs on the day of the search.

The State introduced other evidence linking appellant to the Savorey Lane house over a ten-year period of time. A detective with the Austin Police Department testified that he encountered appellant at the Savorey Lane residence in the course of his duties on October 31, 1995. Appellant was in the house with another male individual who did not reside at the house. On another occasion, on the morning of December 17, 2005, a police officer was dispatched to 5107 Savorey Lane in response to a call that appellant's red pickup truck, which was parked in front of the house, had been damaged by two men. In response to the officer's questions for the offense report, appellant reported his address as 5107 Savorey Lane. He told the officers the men had been driving

8

by his home for at least a month, including on one occasion when appellant was stringing Christmas lights on his house.

We conclude that the logical force from the totality of the links, including the proximity of documents and medicine belonging to the appellant to the contraband and the other drug paraphernalia in the master bedroom, is sufficient for a rational fact finder to link appellant to the contraband in the bedroom. A rational fact finder could have found the element of possession beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19; *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).

As to factual sufficiency, the fact finder reasonably could have found that the packaged cocaine located near items belonging to appellant in the master bedroom along with the scales and surveillance equipment in the same room link him to the contraband. Appellant's contention that other people were in the home and had access to the premises does not necessarily lead to the conclusion that appellant did not exercise care, custody, control, or management over the cocaine found in the bedroom of the residence. At most, this evidence suggests that appellant may not have had exclusive control or possession of the contraband. *See Cedano v. State*, 24 S.W.3d 406, 412 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Possession of a controlled substance, however, need not be exclusive to constitute a violation of the law. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).

The record in this case contains ample evidence to link appellant to the residence and the contraband found in the residence. The court observed that even a defense witness referred to the Savorey Lane address as appellant's "place" on one occasion. The relative probative value of

9

all the above evidence, including the credibility of the witnesses, was assessed by the trial judge in reaching his verdict. When the trial judge found appellant guilty, he expressed his view that the evidence was probative and sufficient to support his finding. The trial judge recounted the evidence upon which he relied, including:

> the cameras and the way the cameras were placed, the way they were connected, the monitors or monitor of the cameras, the items found in the master bedroom and the dresser drawer, including personal papers, drugs, scales in the closet, together with the insulin box, the many contacts people had with the defendant at that address over the years, including surveillance as recent as that morning, [and] all the other contacts.

We cannot reweigh the evidence. *See Watson*, 204 S.W.3d at 417. We conclude that a rational fact finder could have found beyond a reasonable doubt that the evidence linked appellant to the contraband. We also conclude that the verdict is not so against the great weight and preponderance of the evidence as to be manifestly unjust, and proof of guilt is not so weak as to undermine confidence in the fact finder's determination. We therefore hold that the evidence was legally and factually sufficient.

**CONCLUSION**

We overrule appellant's issues and affirm the judgment of conviction.

10

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   May 8, 2007

Do Not Publish

11