Opinion issued August 2, 2007 



















In The

Court of Appeals

For The

First District of Texas






NO. 01-06-01003-CR

____________


EVANGELISTA CEDENO, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause No. 1046772






MEMORANDUM OPINION

 A jury found appellant, Evangelista Cedeno, guilty of the offense of possession
with intent to deliver a controlled substance, namely cocaine, weighing at least 400
grams. (1) Pursuant to appellant's agreement with the State, the trial court assessed his
punishment at confinement for forty years and a one-dollar fine. In four points of
error, appellant contends that the evidence is legally and factually insufficient to
support his conviction.

 We affirm.

Factual Background

 Pasadena Police Department Officer D. Leal testified that on November 9,
2005, acting upon information that his department received from the Drug
Enforcement Administration ("DEA"), he drove to the entrance of a small trailer park
looking for a Hispanic male by the name of Evangelista, driving a white Ford Crown
Victoria. Leal saw appellant arrive at the trailer park at 3:25 p.m. on a "clear and
sunny" day. Appellant drove a white Ford Contour, which has a similar body style
to that of a Ford Crown Victoria, parked at trailer number 222, and then walked to
trailer number 220. Leal, who was approximately fifty feet from the car, saw that
appellant was the sole occupant of the car. The registered owner of the car was
Jacqueline Torres, who lived at trailer number 220.

 Leal further testified that after a woman came out of trailer number 220,
appellant then walked back to the car and began washing it. Appellant opened the
trunk of the car, pulled out a box, went to the right rear passenger side of the car, and
placed the box in the back seat of the car. During this time, appellant was "on the
phone continuously." He appeared angry and was "waving his arms and talking in
that kind of manner." Appellant then "waited, talked on the phone a little bit, pulled
the box back out from inside the vehicle, and put it back in the trunk." Leal explained
that appellant touched the box "maybe four to five times," and he found appellant's
activities to be "very consistent" with narcotics trafficking. After appellant closed the
trunk, he "waited 10, 15 minutes and reopened the trunk, rearranged some stuff inside
and closed it again." After he received one last phone call, appellant drove off in the
car. Leal explained that appellant was at the trailer park for about one hour, and it
"[l]ooked like he was actually waiting for somebody."

 Pasadena Police Department Officer R. Garivey testified that he was asked to
conduct a traffic stop of the white Ford Contour. After Garivey saw that the right
taillight was not functioning, he activated his emergency equipment, stopped the car,
made contact with appellant, and told appellant why he had been stopped. Garivey
explained that appellant was cooperative. When Garivey asked for appellant's
driver's license, he noticed that appellant was "extremely nervous" and "shaking" as
he handed over his driver's license. Garivey then asked appellant to exit the car and
showed appellant the malfunctioning taillight. Garivey asked appellant where he was
driving from, and because appellant began "moving around a lot" and "sweating," he
could tell that appellant was "extremely nervous." Appellant said that he was coming
from a friend's house and was going fishing, but no fishing equipment was found in
appellant's car. Appellant signed a consent form in Spanish to search the car. (2)

 After searching the interior of the car, Officer Garivey opened the trunk and
"saw what appeared to be a gray Sketcher[s] brand shoe bag and it contained like a
brownish cardboard box." Appellant told Garivey that he did not know what was
inside the box. Garivey "pulled the box out to look in, at which time [he] noticed
what appeared to be . . . bricks of cocaine." The box was not taped or sealed and
"was just folded over" inside of the gray Sketchers bag. After Garivey pulled the box
out of the bag, he counted five bricks of cocaine. However, Garivey did not find any
other narcotics, narcotics paraphernalia, or cash inside the car, and appellant indicated
that he was surprised that cocaine was found inside the trunk. Based on his
experience, Garivey did not believe that the amount of cocaine found was for
personal use, but rather would be used to be sold for profit.

 Pasadena Police Department Officer J. Wright testified that when he arrived
at the city jail, Officer Garivey directed him to a box containing "five brick-like
white, off-white brick substances. Four of them were wrapped in a real heavy
cellophane and one was just actually clear, clear white." Wright "recognized that this
is common as to how kilograms of cocaine are packaged and transported" and
indicated that the amount of cocaine recovered was "well beyond personal use" and
was for "distribution." The cocaine weighed approximately five kilograms, with a
street value between $500,000 and $750,000. Wright explained that such an amount
"is well beyond personal use quantity" and "would definitely be for delivery, being
the way it was packaged and everything else with it there." Wright further testified
that while at the police station after being arrested, appellant's demeanor was "very
agitated and very uncooperative and almost combative."

 Claudia Busby, a forensic chemist and quality manager at the Pasadena Police
Department Crime Laboratory, testified that she received "five brick packages of
white powder," weighing approximately 4.8 kilograms. Her testing of the substance
indicated the presence of "approximately 88 percent pure cocaine hydrochloride." 
Pasadena Police Department Officer K. Ginther testified that he was not able to
gather any useable fingerprints off of the bricks of cocaine or the cardboard box. 
Ginther recovered one useable print from the plastic bag, but was unable to match the
fingerprint.

Standard of Review

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We note that
the trier of fact is the sole judge of the weight and credibility of the evidence. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the fact finder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
are required to afford "due deference" to the jury's determinations. Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

Knowingly in Possession

 In his first and second points of error, appellant argues that the evidence is
legally and factually insufficient to prove that he knowingly possessed the cocaine
because (1) "the drugs were not in plain view, nor was there evidence that [appellant]
ever looked into the closed box"; (2) appellant "was not the owner of the white
Contour"; (3) "[t]he contraband was not found on the driver's side of the car"; (4)
"the place where the drugs were found was not enclosed, in the sense of hidden"; (5)
"there was no odor of drugs present"; (6) "there was no paraphernalia of any kind";
(7) appellant's "conduct in cooperating with the officers and signing the consent to
search form did not indicate any consciousness of guilt"; (8) appellant "did not appear
to be under the influence of cocaine, or any other substance"; (9) "there were no
conflicting statements about ownership of the property involved"; (10) appellant "did
not appear to be under the influence of cocaine, or any other substance"; (11)
"[n]othing [appellant] said connected him to the cocaine"; (12) "[n]o traces of cocaine
were found on or near him"; and (13) "[n]o large sum of money was found." 
Appellant asserts that he "was never seen touching the contents of the bag and box,
nor reaching within it, nor even looking in it."

 A person commits an offense if he knowingly or intentionally possesses, with
intent to deliver, cocaine in an amount of 400 grams or more by aggregate weight,
including any adulterants or dilutants. Tex. Health & Safety Code Ann.
§ 481.102(3)(D) (Vernon Supp. 2006), § 481.112(a), (f) (Vernon 2003). To establish
unlawful possession with the intent to deliver a controlled substance, the State must
show that a defendant (1) exercised care, custody, control, or management over the
controlled substance; (2) knew that he possessed a controlled substance; and (3) had
the intent to deliver the controlled substance. See id. § 481.002(38) (Vernon Supp.
2006), § 481.112(a) (Vernon 2003); see also Poindexter v. State, 153 S.W.3d 402,
405 (Tex. Crim. App. 2005).

 The State may prove that a defendant knowingly possessed contraband by
offering circumstantial evidence affirmatively linking him to the contraband. Brown
v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). The State need not show that
the defendant exercised exclusive control over the controlled substance, but, when
the defendant does not have exclusive control, the State must show additional
affirmative links between the defendant and the contraband. Cedano v. State, 24
S.W.3d 406, 411 (Tex. App.--Houston [1st Dist.] 2000, no pet.). The affirmative
links must raise a reasonable inference that the defendant knew of and controlled the
contraband. Dickerson v. State, 866 S.W.2d 696, 700 (Tex. App.--Houston [1st
Dist.] 1993, pet. ref'd). Affirmative links are established when the evidence, direct
or indirect, establishes that the accused's connection with the narcotics was more than
just fortuitous. Parker v. State, 192 S.W.3d. 801, 805 (Tex. App.--Houston [1st
Dist.] 2006, pet. ref'd).

 Factors that may be considered to establish affirmative links include (1) the
defendant's presence when the search was executed; (2) whether the narcotics were
in plain view; (3) the defendant's proximity to and accessibility of the narcotics; (4)
whether the defendant was under the influence of narcotics when arrested; (5) the
defendant's possession of other narcotics when arrested; (6) the defendant's
incriminating statements; (7) the defendant's attempted flight; (8) the defendant's
furtive gestures; (9) the presence of an odor of the narcotics; (10) the presence of
other narcotics or narcotics paraphernalia; (11) the defendant's ownership or right to
possession of the place where narcotics were found; and (12) whether the narcotics
were found in an enclosed place. Williams v. State, 859 S.W.2d 99, 101 (Tex.
App.--Houston [1st Dist.] 1993, pet. ref'd). Despite this list of factors, there is no
set formula necessitating a finding of an affirmative link; rather, affirmative links are
established by the totality of the circumstances. Sosa v. State, 845 S.W.2d 479, 483
(Tex. App.--Houston [1st Dist.] 1993, pet. ref'd). It is not the number of factors
present that is important, but rather the "logical force" that they create to prove that
a defendant knowingly possessed the controlled substance. Parker, 192 S.W.3d. at
805. Here, viewing the evidence in a light most favorable to the verdict, Officer Leal
testified that he was looking for a Hispanic male driving a white Ford Crown Victoria
when he spotted appellant driving a white Ford Contour, described as having a
similar body style to that of a Crown Victoria. Although appellant was not the
registered owner of the car, during both Officer Leal's surveillance and Officer
Garivey's subsequent traffic stop and search of the car, appellant was the only person
who accessed the car and, thus, had access to the narcotics. Officer Leal saw
appellant move the box containing the cocaine from the trunk to inside the car and
touch the box "maybe four to five times." When he pulled the box containing the
cocaine out of the gray Sketchers bag, Officer Garivey saw that the box was not taped
or sealed, and he was able to see the bricks of cocaine in the box. From inside the
box, officers recovered 4.8 kilograms of "88 percent pure cocaine hydrochloride,"
with a street value in excess of $500,000. Although appellant told Garivey that he
was going fishing, no fishing equipment was found inside the car. Additionally,
Garivey stated that appellant was "extremely nervous" during the traffic stop and
subsequent search. We conclude that a rational trier of fact could have found, beyond
a reasonable doubt, that appellant knowingly possessed the cocaine. Accordingly, we
hold that the evidence is legally sufficient to establish that appellant knowingly
possessed the cocaine.

 Viewing the evidence neutrally, it is true that Officer Garivey testified that
appellant was cooperative and signed a consent form to search the car. Appellant told
Officer Garivey that he did not know what was inside the box, and no other narcotics,
narcotics paraphernalia, or cash was found inside the car. Additionally, no
fingerprints matching that of appellant were recovered from the bricks of cocaine or
the cardboard box. However, although appellant was not the registered owner of the
car, he was in sole possession of the car at the time of the surveillance and the traffic
stop. In light of the above evidence supporting the jury's verdict, we conclude that
the evidence is not so obviously weak such that the verdict is clearly wrong and
manifestly unjust, or that the proof of guilt is against the great weight and
preponderance of the evidence. Accordingly, we hold that the evidence is factually
sufficient to establish that appellant knowingly possessed the cocaine.

 We overrule appellant's first and second points of error.

Intent to Deliver

 In his third and fourth points of error, appellant argues that the evidence is
legally and factually insufficient to prove that he intended to deliver the cocaine
because (1) "[a]s to the nature of the place where [appellant] was arrested, he was
arrested in broad daylight driving down a Harris County two-lane street"; (2) "there
was nothing unusual about the manner of packaging"; (3) "no drug paraphernalia was
found"; (4) appellant "was not found to be in possession of a large amount of cash";
and (5) "there was no evidence that he was a dealer as opposed to a user, except for
the quantity of drugs themselves." Appellant asserts that the State failed to prove that
he "knew there was contraband in his car," and that because "he was not the owner
of the car, it cannot be concluded that [he] had knowledge of and control over the
substance." Appellant notes that he "was never seen touching the contents of the bag
and box, nor reaching within it, nor even looking in it."

 Intent to deliver a controlled substance may be proved by circumstantial
evidence. Williams v. State, 902 S.W.2d 505, 507 (Tex. App.--Houston [1st Dist.]
1994, pet. ref'd). Factors courts have considered include (1) the nature of the location
at which the defendant was arrested; (2) the quantity of controlled substance in the
defendant's possession; (3) the manner of packaging; (4) the presence of drug
paraphernalia (for either drug use or sale); (5) the defendant's possession of large
amounts of cash; and (6) the defendant's status as a drug user. Id. The number of
factors present is not as important as the "logical force" the factors have in
establishing the elements of the offense. Moreno v. State, 195 S.W.3d 321, 326 (Tex.
App.--Houston [14th Dist.] 2006, pet. ref'd). Expert testimony by experienced law
enforcement officers may be used to establish an accused's intent to deliver. Id.

 Here, officers recovered 4.8 kilograms of "88 percent pure cocaine
hydrochloride" with a street value possibly in excess of $500,000. Officer Leal
testified that appellant's observed activities were very consistent with those
associated with narcotics trafficking. Officer Wright testified that, based on the
packaging of the narcotics and the quantity of narcotics recovered, the narcotics were
being used for distribution and not merely personal use.

 Viewing all the evidence in the light most favorable to the jury's verdict, we
conclude that a rational trier of fact could have found, beyond a reasonable doubt,
that appellant intended to deliver the cocaine. Furthermore, viewing the evidence
neutrally, we conclude that the evidence is not so obviously weak such that the jury's
verdict is "clearly wrong and manifestly unjust" or that the proof of guilt is against
the great weight and preponderance of the evidence. Accordingly, having held that
the evidence is legally and factually sufficient to establish that appellant knowingly
possessed the cocaine, we further hold that the evidence is legally and factually
sufficient to establish that appellant intended to deliver the cocaine.

 We overrule appellant's third and fourth points of error.Conclusion

 We affirm the judgment of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2006), §
481.112 (a), (f) (Vernon 2003).
2. Garivey testified that appellant "spoke mainly Spanish." Garivey also speaks Spanish
and believed that appellant understood what he was saying.